OPINION JUSTICE TODD[1] In this matter, we consider the request of Petitioner, the Office of Disciplinary Counsel (“ODC”), to disbar Respondent, Paul Michael Pozonsky, from the practice of law in this Commonwealth. Pozonsky was a commissioned judge of the Court of Common- Pleas of Washington County who presided over criminal- trials, juvenile delinquency hearings, • and also directed the rehabilitative disposition of drug offenders in that county’s Drug Court, which he founded. Using his position as a jurist, he-directed police officers and court personnel to bring cocaine, which was evidence in the cases over which he was presiding, to an evidence locker in his courtroom; whereupon, for over a year, he stole quantities of this illegal drug from that locker and used it for his own recreational purposes, all while continuing to preside over criminal prosecutions and imposing sentences on defendants for committing crimes which he himself was -contemporaneously engaging in. After Pozonsky's illicit activities were discovered, he resigned his judicial commission and was convicted for his crimes. After considering all the relevant facts and circumstances surrounding Pozonsky’s egregious misconduct while a commissioned judge, and taking into account the mitigating evidence he offered, the Disciplinary Board of the Supreme Court of Pennsylvania (“Disciplinary Board” or “Board”) issued a unanimous report detailing its factual findings and its recommendation that he be disbarred. Because the evidence of record amply supports the Board’s findings and corresponding recommendation of disbarment, we order Pozon-sky’s disbarment to both protect the public and to preserve the integrity of the legal profession. I. Facts and Procedural History Pozonsky was admitted to the bar of this Commonwealth in 1980, Thereafter, he maintained a private law practice, and, in 1984, he was elected to the position of magisterial district judge, a position he held for the next 13 years, while he also continued to practice law part-time. In 1997, the people of Washington County elected him a judge of the Court of Common Pleas of that county, and he assumed the bench in January 1998. For nearly all of the subsequent 14 years, while holding this judicial position, Pozonsky presided over the criminal trials of individuals alleged to have committed criminal offenses, including drug crimes, and, thus, was responsible for fashioning sentences for those found guilty of such offenses, as he deemed appropriate. During his tenure as a jurist, Respondent also adjudicated juvenile delinquency cases, a number of which involved drugs. For the juveniles he adjudicated delinquent, he was required to tailor programs of supervision, care, and rehabilitation so that they could compensate the victim and community for the harm- which they caused, while also ensuring that they received necessary treatment services to overcome behavioral and substance abuse issues and developed sufficient competencies to become responsible and productive members of society. Significantly, in 2005, Pozonsky created the Drug Court of Washington County, which he later supervised, and he presided over all cases processed through that court. By way of background, drug courts are used as an alternative to the conventional criminal prosecution process in appropriate cases involving drug-related crimes, or where offenders are coping with a drug addiction, in order to achieve the twin goals of reducing the incidence of drug-related crimes, and preventing recidivism by offenders. Employing principles of “therapeutic jurisprudence,” these courts combine intensive judicial supervision, drug testing, and comprehensive treatment to assist offenders in overcoming the substance abuse problems that enmeshed them in the criminal justice system. See generally. The Honorable Peggy Fulton Hora et. al., Therapeutic Jurisprudence and the. Drug Treatment Court Movement: Revolutionizing the Criminal Justice System’s Response to Drug Abuse and Crime in America, 74 Notre Dame L. Rev. 439 (1999). In Pennsylvania, drug courts comprise an integral part of the Commonwealth’s multi-faceted system of problem-solving courts, a program which this Court has taken great pride in establishing and fostering. Judge Pozonsky’s role in the cases he handled in the Washington County Drug Court program was to lead a team. of professionals, which included a prosecutor, defense counsel, a treatment provider, a probation officer, a member of law enforcement, and a court coordinator, in cooperatively supporting and monitoring .the progress of. an offender afflicted with a substance abuse problem to ensure that he or she successfully overcame it. See Administrative Office of Pennsylvania Courts, “Drug Courts,” available at http://www. pacourts.us/judicial-administration/court-programs/drug-courts (explaining the fundamentals of the operation of Pennsylvania drug courts). This process relies on a tightly structured treatment program tailored to the particular circumstances of the offender, and concomitantly necessitates strict adherence by the offender to the program requirements. Accordingly, Po-zonsky was required, in some instances, to enforce compliance by imposing sanctions on the offender, or, when those sanctions failed to alter the offender’s behavior, removing him or her from the program and reinstituting regular criminal proceedings. Id. Beginning sometime in late October or early November 2010, and continuing through January 2012, Pozonsky exploited his position as a judge, to steal powdered cocaine — an illegal controlled substance— that was the principal evidence in criminal or delinquency hearings held in his courtroom.[2] Specifically, he ordered state troopers who had seized cocaine which was to be used in the criminal prosecutions or juvenile adjudications over which he was scheduled to preside, as well as a court employee — his law clerk — to bring that evidence to his courtroom, where he stored it in an evidence locker in his chambers. He then surreptitiously and regularly removed quantities of this illicit substance from that locker when courtroom staff was not present, smuggled it opt of the courthouse, and used it at his home. Pozonsky attempted to conceal his thefts by substituting baking powder and other substances for the cocaine he had stolen and used. In early 2012, Pozonsky issued an order directing the destruction of evidence from closed criminal cases he had presided over. That, and the manner in which other evidence stored in the evidence locker, was being. handled, generated: suspicion and concern from the Washington County District Attorney, Eugene Vittone, and the then-President Judge of that county, Debbie O’Dell,, Seneca, These matters were referred to the Office of the Attorney General which began a formal criminal investigation of Pozonsky. The investigation resulted, inter alia, in the search of Po-zonsky’s chambers by,the Pennsylvania State Police who retrieved all remaining evidence stored there on May 9, 2012. Po-zonsky resigned from the bench in June 2012, and resumed active status as an attorney; whereupon, he moved with his family to Alaska. While in Alaska, Pozon-sky secured a job as a workers’ compensation hearing judge, which he held from October 8, 2012, until he resigned on December 7, 2012. On October 13, 2013, the Attorney General filed a criminal information against Pozonsky in the Court of Common Pleas of Washington County charging him with six separate criminal offenses related to his cocaine theft: violating the Public Official and Employee Ethics Act, 65 P.S. § 1103(a),-an ungraded felony; committing theft by unlawful taking, 18 Pa.C.S. § 3921(a), graded as a first-degree misdemeanor; theft by failure to make required disposition of property, 18 Pa.C.S. § 3927(a), graded as a first-degree misdemeanor; obstructing the administration of law, 18 Pa.C.S. § 5101, graded as a first-degree misdemeanor; misapplication of entrusted property, 18 Pa.C.S. § 4113, graded as a first-degree misdemeanor; and possession' of a controlled substance, 35 P.S. § 780-113(a)(15), an ungraded misdemeanor. On March 20, 2015, Pozonsky pleaded guilty to one count of theft by unlawful taking, obstructing administration of law, and misapplication of entrusted property and property of a government institution, all graded as second-degree misdemeanors. Four months later, on July 13, 2015, he was sentenced to 1 to 23 ½ months incarceration, followed by two years probation. Pozonsky ultimately served the minimum term of incarceration — one month— and successfully completed his term of probation. Our Court issued an order on August 19, 2015 temporarily suspending Pozonsky’s law license, in accordance with Pa,R.D.E. 214(d)(2). Following that action, ODC filed a Petition for Discipline, to which Pozon-sky filed a counseled answer. A disciplinary hearing was held on March 15, 2016 before a Hearing Committee comprised of three members of the Board. At this hearing, the ODC presented as evidence the aforementioned criminal information filed against Pozonsky, his plea agreement, his written and oral plea colloquies, the transcript of his sentencing hearing, and the order imposing his criminal sentence. Pozonsky testified on his own behalf and recounted the details of his legal career, during which he was never subject to disciplinary proceedings. He acknowledged that he had used cocaine recreationally since the 1980s, including during his prior service as a magisterial district judge and during his tenure on the bench of the Court of Common Pleas, but he denied that he ever took the bench or adjudicated cases while under the influence of cocaine. Pozonsky further denied that he was addicted to cocaine at the time he began stealing from the evidence locker. But he admitted that he knew that the theft constituted a crime. Pozonsky related that he first sought treatment for his cocaine use in May 2011; that he ceased using any controlled substances as of January 24, 2012; and that he remained drug free as of the date of the disciplinary hearing. Pozonsky additionally detailed his post-conviction community service activities, which included volunteering at a homeless shelter and various community drug abuse rehabilitation centers. Pozonsky also testified that he was completing a nine-week program to become a certified rehabilitation specialist. Pozonsky characterized his conduct as “not appropriate,” N.T. Disciplinary Hearing, 3/15/2016, at 32, and he admitted that he had besmirched the reputation of the Washington County Court of Common Pleas, the Commonwealth’s judicial system, and his own reputation as a judge and a lawyer, as well as the reputation of other members of the bar. Pozonsky additionally introduced as exhibits 68 character letters from fellow attorneys, friends, coworkers, and members of the community which had been presented to the sentencing judge in the criminal proceedings against him. In these letters, the authors attested to Po-zonsky’s good character in the community and as a judge. Pozonsky also submitted as mitigating evidence letters from three professional substance abuse counselors with whom he had received treatment, two from Washington County — Timothy Grealish and Rocco Ferri — and one from Alaska— Deborah Stamm. These letters detailed, inter alia, their observations regarding Pozonsky’s addiction and his progress towards recovery. Pozonsky also introduced as an exhibit a newspaper article from the Pittsburgh Post-Gazette in which District Attorney Vittone is quoted as saying that no eases were affected because of Pozon-sky’s theft of the cocaine, as well as a portion of the transcript of Pozonsky’s sentencing hearing in. which the Office of the Attorney General did not dispute that assessment. After the March 16, 2016 Committee hearing had concluded, at which neither party brought Pozonsky’s employment in Alaska as a workers’ compensation judge to the Committee’s attention, the Committee discovered this fact via its own independent internet search". The Committee then held a second hearing to explore this matter further, at which Pozonsky offered testimony to explain the circumstances of his application for that quasi-judicial position and his subsequent resignation. Although Pozonsky recalled that he disclosed the then-active criminal investigation to the officials in Alaska’s Department of Labor who hired him, he stated that that investigation was not the reason for his resignation, but, rather, averred that he was asked to resign because his employer discovered that he was not deemed domiciled in Alaska at the timé of his application.[3] Pozonsky also presented evidence that he had passed the test required by the Pennsylvania Certification- Board and was now a certified recovery specialist. Both parties filed briefs, and the Hearing Committee issued a report on August 24, 2016 recommending .Pozonsky’s disbarment from the- practice of law. . The Committee observed that, because Pozonsky had pled guilty to multiple criminal offenses, grounds for discipline manifestly existed under Pa.R.D.E. 203(b)(1) (stating that conviction of a crime shall-'bé grounds for discipline); thus, the only question it was required to determine was the appropriate discipline to impose. The Committee highlighted as mitigating factors in its choice of discipline the fact that Pozonsky had no prior record of misconduct as an attorney, and that he acknowledged his wrongdoing and demonstrated remorse. However, the Committee rejected Pozonsky’s assertion that his addiction to cocaine should be considered as a mitigating factor under our Court’s decision in Office of Disciplinary Counsel v. Braun, 520 Pa. 157, 553 A.2d 894 (1989), in which we determined that expert psychiatric testimony establishing that an attorney’s psychological condition was a causal factor in his misconduct was properly considered as mitigating evidence. The Committee noted that Pozonsky did not introduce any evidence, either via expert testimony or through the character letters written on his behalf, which met the Braun standard for • mitigation — i.e.,' he failed to demonstrate a causal connection between his addiction and his actions. Because of the dearth of evidence establishing this requisite causal link, the Committee did not consider Pozonsky’s addiction to.be a mitigating factor. The Committee thus proceeded to examine other non -Braun mitigating evidence such as Pozonsky’s lack of prior discipline, his efforts at addiction rehabilitation, his appearance at all- disciplinary hearings, his involvement in the community, and the breadth of the character evidence reflected in the letters written on his behalf. While recognizing this evidence, the Committee found that it. did not mitigate the imposition of discipline given what it considered to be Pozonsky’s “egregious conduct.” Disciplinary Board Hearing Committee Report, 8/24/16, at 7. Specifically, the -Committee found that the' dishonesty exhibited by Pozonsky, both in stealing and using the cocaine evidence while a sitting judge, and then failing to disclose his employment in Alaska during the disciplinary proceedings, was so serious in nature that it constituted an aggravating factor which weighed heavily against him. Regarding his theft and use of the cocaine, which as noted was evidence in the very proceedings over which he continued to preside, the. Committee opined: This was not a situation where [Pozon-sky] bought drugs on the street or anywhere else on his own personal time, with regular clothes on, giving the appearance that he is a drug buyer/user like the next person. This is. a situation where [Pozonsky] was dressed in his black robe, being addressed as “Judge” or “Your Honor” on a daily basis in the Criminal Division of the Court of Common Pleas. Appearing in this manner, he addressed other like-minded individuals who were addicted to drugs in the Drug Court program, since he was the sitting judge and, after looking upon them in judgment and sentencing them to a term of imprisonment or probation, took their drugs that were submitted into evidence and used them himself. The hypocrisy is astounding. Disciplinary Board Hearing Committee Report, 8/24/16, at 8. The Committee found that the level of dishonesty evidenced by this conduct negated what Pozonsky had accomplished over the. course of his legal career and undermined the integrity of the legal system. The Committee noted that Pozonsky’s acceptance of the judicial position in Alaska, while he knew he was being criminally investigated, was another example of his dishonest conduct that further undermined the integrity of the legal system. The. Committee unanimously recommended his disbarment. Pozonsky filed exceptions to the Hearing Committee’s report and recommendation and a brief in support thereof, to which ODC responded. After review, the Board adjudicated the matter at its regular meeting and unanimously recommended Pozon-sky’s disbarment. Because Pozonsky’s criminal convictions were “incontrovertible evidence of his professional misconduct,” the Board viewed its sole task to be to recommend to our Court the appropriate discipline, recognizing that the “recommended discipline must reflect facts and circumstances unique to the case, .including circumstances that are aggravating .or mitigating.” Disciplinary Board Report and Recommendations, 12/21/2016, at 7. The Board reviewed the mitigating evidence offered by Pozonsky at the disciplinary hearing, which,- as indicated above, included his lack of prior discipline, his denial of using drugs while on the bench, his assertion that his drug use did not compromise the cases he was adjudicating, his treatment efforts, his community service, his cooperation with the ODC, and the many character letters from community members. The Board found, however, that this mitigating evidence had to be weighed against the following aggravating circumstance: [A]t the time of the misconduct, [Pozon-sky], held a position of responsibility and authority and had a high public profile. It is disturbing irony that [Pozonsky], who was the creator, supervisor and sitting judge of the Washington County drug court, sat in judgment of and imposed sentence on individuals who engaged in drug-related criminal acts, after which [Pozonsky] took the drugs that were submitted into evidence and used them himself. Id. at 9. The Board found significant Pozonsky’s status as an elected judge at the time of his crimes, a position the Board viewed as creating a high expectation of his integrity as an attorney because he was entrusted with the task of protecting the public. Significantly, the Board noted that, in Office of Disciplinary Counsel v. Cappuccio, 616 Pa. 439, 48 A.3d 1231, 1240 (2012), discussed at greater length infra, our Court emphasized that an. attorney’s status as a public official may properly be regarded as aggravating any misconduct he or she engages in while holding that position. Although acknowledging that the Hearing Committee found that Pozonsky’s action in taking the position in Alaska was a further demonstration of his dishonesty, and, thus, an aggravating factor warranting discipline, the Board determined that it was not necessary to consider this evidence. The Board reasoned that Pozon-sky’s, criminal conduct while .serving as judge was so egregious that, standing alone, it warranted his disbarment, as “[a] judge’s misconduct speaks directly to the integrity of the legal system by placing the reputation of those tasked with serving and protecting the public at issue.”[4] Disciplinary Board Report and Recommendations, 12/21/2016,' at 10. The Board also considered persuasive the fact that other attorneys had been disbarred for committing criminal acts while holding judicial office. See Disciplinary Board Report at 11-12 (citing Office of Disciplinary Counsel v. Rolf Larsen, 19 DB 2003 (Disciplinary Board Report filed 6/23/2006; Supreme Court order filed 11/30/2006) (disbarring former Supreme Court Justice for obtaining prescription medication for his depression using the names of other individuals, even‘though Disciplinary Board recommended a three-year suspension); Office of Disciplinary Counsel v. Michael Joyce, 47 DB 2009 (Disciplinary Board Report filed 2/10/2012; Supreme Court order filed 6/14/2012) (disbarring former Superior Court judge for federal convictions of mail fraud and related offenses arising out of an automobile accident); Office of Disciplinary Counsel v. David Murphy, 188 DB 2010 (Disciplinary Board Report filed 5/4/2012; Supreme Court Order filed 1/30/2013) (disbarring former magisterial district judge for forging 64 signatures on nominating petitions in his reelection campaign); Office of Disciplinary Counsel v. Thomas Nocella, 152 DB 2013 (Disciplinary Board Report filed 6/5/2015; Supreme Court Ordér filed 10/20/2015) (disbarring attorney for ¿thical violations committed while a candidate for judicial office, which included concealing prior court sanctions and disciplinary actions taken against him from the judicial ¿valuation commission which was rating him for judicial office)). By contrast, the Board found inapposite cases in which other public officials holding non-judicial offices were not disbarred for criminal acts they engaged in while holding those positions. See Disciplinary Board Report at 12-13 (discussing Office of Disciplinary Counsel v. Preate, 557 Pa. 4, 731 A.2d 129 (1999) (attorney received five-year suspension for accepting illegal campaign contributions while district attorney and later as Pennsylvania Attorney General and filing false election reports to conceal that behavior), and Office of Disciplinary Counsel v. Eilberg, 497 Pa. 388, 441 A.2d 1193 (1982) (suspension imposed on attorney who received proceeds from his law firm’s representation of a client in a matter before a federal agency while the attorney was a sitting U.S. Congressman, a violation of federal law for which he was convicted)). The Board distinguished these cases on the basis that the public officials therein, while having a high public profile, were not judges, who, by contrast, are “held to a heightened standard.” Disciplinary Board Report and Recommendations, 12/21/2016, at 13. The Board thus concluded with respect to Pozonsky that only disbarment would maintain the integrity of the legal profession. After the Board’s Report and Recommendation was transmitted to our Court, Pozonsky requested oral argument, which our Court granted and held on April 4, 2017. Neither party has submitted new briefs to our Court, but, instead, both parties presently rely on their briefs submitted to the Disciplinary Board. II. Analysis Our Court conducts de novo review of all attorney disciplinary matters; however, “the findings' of the Hearing Committee and the Board are guidelines for judging the credibility of witnesses and should be given substantial deference.” Cappuccio, 48 A.3d at 1236. In attorney disciplinary proceedings, the ODC bears the burden of proof of establishing an attorney’s misconduct by a preponderance of the evidence. Office of Disciplinary Counsel v. Preski, 635 Pa. 220, 134 A.3d 1027, 1031 (2016). Because discipline “is imposed on a case-by-case basis, we must consider the totality of facts presented, including any aggravating or mitigating factors.” Id. However, even though each attorney disciplinary matter must be resolved according to its unique facts and circumstances, our Court nevertheless endeavors to maintain consistency in disciplinary matters “so that similar misconduct is not punished in radically different ways.” Id. (quoting Office of Disciplinary Counsel v. Lucarini, 504 Pa. 271, 472 A.2d 186, 190 (1983) (internal quotation marks omitted)). Under our Rules of Disciplinary Enforcement, an attorney’s criminal conviction furnishes a basis for the imposition of discipline. Pa.R.D.E. 203(b)(1). However, our Court has not adopted a per se rule that requires automatic disbarment for every instance of attorney misconduct which results in a criminal conviction. In re Melograne, 585 Pa. 357, 888 A.2d 753, 757 (2005). Instead, in determining the proper measure of discipline, which is not intended to be punitive in nature, we consider whether the discipline imposed will fulfill the primary purpose of the disciplinary process, which is the protection of the public, the preservation of the integrity of the courts, and the deterrence of unethical conduct. Office of Disciplinary Counsel v. Czmus, 586 Pa. 22, 889 A.2d 1197, 1203 (2005). Pozonsky’s first and central claim is that disbarment is not the appropriate sanction for his conduct, and he requests the imposition of a retroactive suspension “for an appropriate period.”[5] Respondent’s Brief at 30. Principally, Po-zonsky claims that his disbarment is not warranted in light of the mitigation evidence which he presented, focusing primarily on what he characterizes as the “overwhelming” character evidence introduced through the numerous letters submitted on his behalf. Id. at 23. Pozonsky contends that this character evidence, when considered in conjunction with other mitigating factors such as his lack of prior discipline, and his record of community and public service, which he maintains is more significant than that which was presented in Eilberg and Preate, establishes that he is not wholly unfit to practice law, and, thus, should not be disbarred. ODC counters by emphasizing that criminal conduct by a judicial official warrants the sanction of disbarment because a judge plays such an integral role in the process of the administration of justice that misbehavior while acting in a judicial capacity negatively reflects on his or her qualifications to practice law. ODC also highlights that, even in Nocella, a case where an attorney committed election law violations associated with running for election to judicial office, our Court imposed the sanction of disbarment, despite the Board’s recommendation of a suspension due to weighty mitigating factors. See ODC Brief at 7 (enumerating Nocella’s litany of mitigating circumstances, including his wife’s sudden affliction with paraplegia and blindness necessitating that he become her primary caregiver, his daughters’ resultant .development of psychiatric and physical problems, his father’s placement in hospice care, and his mother’s diagnosis of breast cancer): ODC avers that Pozonsky presented no mitigation evidence of equivalent magnitude. ODC also contrasts the circumstances of Larsen with the present matter, noting that our Court ordered disbarment in that case, disregarding the recommendation of the Disciplinary Board that he receive a three-year suspension, for Larsen’s act of obtaining prescription drugs from his physician to treat his medical condition by having them prescribed to others in an effort to protect his privacy. ODC stresses that Pozonsky, on the other hand, had no legitimate claim to use. the cocaine which he stole, and that he additionally knew he was breaking the law at’the time he took it. Thus, ODC characterizes Pozonsky’s act of breaking the law as being solely motivated by his desire to use cocaine. It is well settled that, when an attorney holds a judicial or other public office, misconduct that he or she engages in which compromises the proper function of that office requires this Court to strongly consider disbarment as an appropriate disciplinary action. Melograne, 888 A.2d at 757. Misconduct of a lawyer “acting in an official capacity as a judge may constitute grounds for disbarment because untrust-worthiness or. infidelity in one office shows-untrustworthiness or infidelity in the other.” Id. at 756; see also Rule of Professional Conduct -8.4, comment (“Lawyers holding public office assume legal responsibilities. going beyond those of .qther citizens. A lawyer’s abuse of public office can suggest an inability to fulfill the .professional role of lawyers.”). Upon review, we find Pozonsky’s grievous conduct far outweighs the mitigation evidence he offered. As a commissioned judge of the Cpurt of Common Pleas of Washington County, Pozonsky swore an oath to the people of the Commonwealth that he would discharge the duties of his office “with fidelity,”[6] The most sacrosanct of his many duties was to obey the Constitution and the laws of this Commonwealth. Instead of adhering to his oath and faithfully upholding the law, however, Pozonsky flouted this paramount duty and used both the great powers of his judicial office, and the processes of the criminal justice system itself, to perpetrate serious drug-related crimes. For over a year, Pozonsky willfully exploited his position as a judge to effectuate the theft of cocaine that was the principal evidence in criminal or delinquency hearings held in his courtroom by ordering law enforcement and court personnel to bring that cocaine to a repository under his control so that he could easily and secretively plunder it at will-. As the deputy attorney general who prosecuted this case noted, Pozonsky “turned the courthouse or courtroom into his stash house, and, basically made law enforcement his private suppliers of cocaine.” N.T. Sentencing Hearing, 7/13/15, at 5 (Petitioner’s Exhibit 4 to Disciplinary Board Hearing, 3/15/2016). This shocking and willful abuse of his office demonstrates Pozonsky’s contemptuous disrespect for the very rule of law itself. The opprobrious nature of Pozonsky’s behavior was compounded by the fact that he was the sole jurist responsible for the operation and administration of Washington County’s Drug Court program, which, paradoxically, he founded and implemented. That responsibility required Pozonsky, in. conjunction with other professionals who treat and supervise drug offenders, to make a careful assessment of defendants who were accused of crimes related to their drug use or dependency, and to tailor an appropriate sentence which incorporated an appropriate therapeutic regimen to help them overcome their substance abuse problems. The linchpin of this evaluation and sentencing process is the capacity of the jurist to undertake an honest assessment of the depth of a defendant’s drug addiction and make a reasoned determination of what rehabilitative and supervisory measures are necessary to assist the defendant in the recovery process, and to protect society from further criminal activity. However, .Pozonsky’s ongoing theft and. use of illegal drugs, while simultaneously publicly pretending to honestly and conscientiously devise appropriate sentencing and treatment plans for those appearing before him, seriously damaged the integrity of this process, rendering it, in essence, a sham and a farce. Pozonsky, through his arrant criminal behavior, also seriously transgressed the essential duty of a judge to conduct himself or herself “in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary.” Code of Judicial. Conduct 1.2. In our democratic society, public confidence in the judiciary is the cornerstone of the people’s regard for the legitimacy of its decisions, and a high degree of public confidence in the integrity of the judicial process is therefore essential to ensure that court decisions -will be respected by the people. See In re Franciscus, 471 Pa. 53, 369 A.2d 1190, 1194 (1977) (“If the judicial system of this Commonwealth fails to maintain a high standard of professional ethics and propriety, then we can expect little faith and confidence to be placéd in our proceedings by the members of the practicing bar or the public”). When a judge’s actions undermine the public’s confidence in the honesty of the judiciary,' it is not only that institution which suffers; indeed, our entire system of government, which depends upon the people’s respect for the law, is damaged. See In re Bruno, 627 Pa. 505, 101 A.3d 635, 675-76 (2014) (quoting Summers v. Kramer, 271 Pa. 189, 114 A. 525, 527 (1921) (“Under" our system of government by law, the business of the court should [ ] always be so conducted as to command the respect of the people [Tjhese requirements are almost or quite’as essential-as the judicial system itself, if the stability of the government, under that system, is to be maintained.”) (internal quotation marks omitted)); Preski, 134 A.3d at 1033 (“Public trust is an indispensable prerequisite to the effective administration of government. When a public official violates that trust, he or she undermines the integrity of the entire system.”). As the Hearing Committee and the Board both recognized, Pozonsky’s conduct was of such an egregious nature that it could not help but severely diminish the public’s confidence in our judiciary as an institution whose members scrupulously adhere to their sacred duty to ensure that the Constitution 'and the laws of this Commonwealth are faithfully applied. At- the time he was committing his crimes, Pozon-sky had served in the judicial system for 26-years, 14 years as a magisterial district judge and then 12 years as a judge of the Court of Common Pleas, and, therefore, he should have been keenly aware of his obligation to maintain the public’s confidence in the judicial system and the rule of law, as well as the incontrovertible fact that his actions would serve to -betray that confidence. " This impact on the public’s confidence in the integrity of the judicial system must be accorded significant weight in evaluating Pozonsky’s fitness to practice law. The public must be assured that ah attorney licensed by our Court has the utmost respect for the public institutions which serve them and which' they support through their tax dollars. The public must also have utter confidence that an attorney, when' practicing law, will strive to have these "institutions function as they were intended, so as to advance not only their individual interests, but also the general" welfare. When an attorney holding public office has shown Pozonsky’s extraordinary level of disrespect for the .integrity "of the judicial’"and legal systems, and the rule of law, the public cannot have any confidence that he is fit to represent their interests and carry out the duties of the legal profession. We, therefore, conclude that Pozonsky’s wanton disregard for'the law, the judicial system, and the public, while holding judicial office, is, as the Hearing "Committee and .the Board found, a compelling aggravating factor warranting his disbarment. The mitigating factors cited by Pozon-sky — his lack .of prior disciplinary history and community service; his expressions of remorse; the contention that none of the cases before him were affected by his crimes; the. numerous character letters presented at his criminal sentencing hearing, as well as our recognition of Pozon-sky’s establishment of the Drug Court program and its positive effects on individuals’ lives who successfully completed treatment in that program — must, of course, be taken into account.by our Court as they were by the lower tribunals. Moreover, we take notice of Pozonsky’s commendable efforts to address his addiction during the pen-dency of his criminal and disciplinary proceedings, as well as his current plans to assist others afflicted, with similar substance abuse addictions as a certified recovery specialist. However, we find these factors, though laudatory, simply do not outweigh the momentous gravity of Pozon-sky’s use of his judicial office to commit crimes. Specifically regarding. Pozonsky’s contention that none of the cases before him were affected by his conduct, it is precisely because he used his position as a judge to perpetrate his crimes, and then chose to continue to preside over the cases of the people being prosecuted for possessing and using the very drugs he, in turn, stole, that we accord it little significance. See Rule of Judicial Conduct 2.3 (“A judge shall perform the duties of judicial office ... without bias or prejudice.”). Likewise, while Pozonsky deserves much credit for establishing the Drug Court program in Washington County, as the jurist in charge of that program, he was uniquely situated to appreciate the connection between drug use and criminal behavior and, thus, he, more than most, should have recognized the harm his conduct' would cause.' Yet, rather than seek treatment for himself, as he ordered for the participants in the program, he elected to steal drug evidence and abuse it. In making this choice, he made a mockery of the very principles on which the program was founded, and severely undermined its efficacy and legitimacy in the eyes of the public, thereby undermining the objectives that he sought to accomplish- with its founding. Having personally tarnished the impact of his pri- or good works in starting and implementing this program, we reject Pozonsky’s status as its founder as mitigation. Our Court has not hesitated to disbar attorneys when they have engaged in gross misconduct subverting the fair administration of justice, despite the presence of significant competent mitigating evidence, because of our recognition that this type of misconduct is of such corrupting magnitude that it is inimical to the proper functioning of our judicial system. In Cappuccio, we ordered the disbarment of an attorney who, while a chief county deputy district attorney, furnished alcohol and marijuana to minors, and had sexual relations with one of them on 12 separate occasions. We did so even though the attorney presented expert psychological testimony that he suffered from an adjustment disorder and sexual identity difficulties, as well as. other evidence as to his good reputation, his expressions of remorse, and his rehabilitative efforts after his misconduct. While acknowledging -this mitigation evidence, we discounted its impact on the appropriate discipline, particularly since the expert testimony did not meet the Braun standard. Further, even though the attorney had presented additional -mitigating evidence such as a lack of prior disciplinary history, cooperation, acceptance of responsibility, expressions of remorse, and intensive counseling to address psycholog-. ical problems, we nevertheless found the fact that the attorney’s status as a public official enabled him to commit his crimes far eclipsed these mitigating factors and necessitated his disbarment: Respondent’s position as a Chief Deputy District. Attorney aggravates the misconduct, particularly in light of the facts here. At the time Respondent was engaging in his ongoing criminal conduct by endangering the welfare of minors and corrupting the morals, his public persona was that of a law enforcement figure in the county, prosecuting members of the public for similar crimes. In our view, any sanction short of disbarment in these circumstances threatens the integrity of the legal system; undermines our very serious duty to protect the public, and fails to give appropriate weight to Respondent’s status as a public official. Cappuccio, 48 A.3d at 1241. In Czmus, our Court disbarred an attorney who willfully concealed the fact that he had previously worked as a physician and committed acts of serious malpractice which led to his medical license revocation, as well as falsified his work history on his applications to the bar of both Pennsylvania and New Jersey. We did so despite his introduction of Braun mitigation evidence showing that he suffered from psychiatric disorders which were causally related to this misconduct, and character references from practicing attorneys. We determined that such fraudulent conduct subverted the truth-determining process of the Board of Law 'Examiners by interfering with its ability to accurately determine if he possessed the character and fitness required to practice law. We considered this conduct to be so egregious that it warranted disbarment “to protect the integrity of the profession and judicial tribunals.” Czmus, 889 A.2d at 1203-04. In In the Matter of Renfroe, we ordered the disbarment of an attorney because of his conviction for bribery of a witness, despite expert testimony that his “long term and ‘severe’ drug addiction caused his professional misconduct and criminal behavior,” 695 A.2d at 402, and evidence that he had undertaken significant rehabilitation efforts to address this addiction after his release from prison. We did so because the attorney’s actions had undermined the ability of the judicial system to fairly render decisions; ' Fair adjudication is predicated upon the ability of courts to arrive at the truth.’It is further predicated upon the confidence that courts will make their decisions based on that truth. If instead, courts are foreclosed from arriving at the truth because attorneys subvert the truth determining process, then justice cannot be administered. Id. at 404. The imposition of the sanction of disbarment in this matter is further supported by our decision in In re Melograne, which involved the disbarment -of a judge who also used his office to' commit serious crimes which undermined the integrity of the judicial system. Attorney Melograne, who was a magisterial district judge,- conspired with employees of the Allegheny County Court of Common.Pleas to fix the outcome of cases in exchange for bribes. Our Court did not hesitate to disbar him, given that such reprehensible conduct “struck at the very core of the judicial system.” Melograne, 888 A.2d at 757. We took such action despite considerable mitigating evidence as to his prior lack of discipline, the completion of his criminal sentence, and letters from distinguished members of the legal profession recommending that he be permitted to practice law. Herein, Pozonsky’s criminal conduct, like the conduct of the attorneys in these cases, corrupted the most basic tenets and principles on which our judicial system is founded, and sabotaged its fundamental adjudicatory processes. The mitigation evidence in this case offered by Pozonsky is far outweighed by this aggravating factor.[7] We next turn to Pozonsky’s argument that the Hearing Committee erred by disregarding the evidence he presented which he claims established a causal connection between his drug addiction and his crimes. As examples of such evidence,-Po-zonsky quotes three letters written by attorneys and submitted on his behalf at the time of his sentencing in his criminal prosecution: I would like to state that I do not condone or excuse Paul’s actions. However, I do know that the crimes Paul committed are a direct result of this disease and addiction and Paul not taking care of himself before all else. I do know first and foremost that this disease can take away our humanity, our ability to think and do the right thing, and, most of all take away everything we love and cherish. Clearly, this disease has taken its toll on Paul and his family.. Letter of Attorney Shawn Stevenson,' Disciplinary Board Hearing, 3/15/2016 '(Respondent’s Exhibit 5). I don’t believe the etiology of his problem was born in a desire to be dishonest or break the law. It is too contrary to his nature .... I do believe addiction is an illness and not a behavior born in criminality. It often leads to criminal behavior but only because of the intensity of the symptoms not a desire to be dishonest. As you know it is an illness that strikes at all walks of life without regard to economic or social status. Letter of Attorney Bob Brady, Disciplinary Board Hearing, 3/15/2016 (Respondent’s Exhibit 38). When the news first broke about Paul, like many of his friends- and family members, I was in total shock and disbelief. This was not at all-'the same guy with whom we grew up, went to school or socialized, and for whom we had so much personal and professional respect. After the initial shock, I tried to rationalize Paul’s behavior on the basis that it could only be done by someone who either had exhibited a total and wanton disregard for the law, or who was under the hellish grip of some terrible, uncontrollable addiction. I quickly concluded that Paul, despite his aberrant behavior, is clearly not a criminal, and that my immediate concern should'be for his personal and spiritual well-being Letter of Attorney Victor DiBattista, Disciplinary Board Hearing, 3/15/2016 (Respondent’s Exhibit 33), Pozonsky also quotes a. letter from a family friend, David Vallina,, who opined that “his actions were a direct result of, .a disease, a sickness, from which he is currently recuperating.” Respondent’s Brief at 26 (quoting Disciplinary Board Hearing, 3/15/2016 (Respondent’s Exhibit 41)), Additionally, Pozonsky highlights the fact that he submitted letters from drug counselors engaged in his treatment process which also prove that he suffered from an addiction to cocaine. Pozonsky maintains that all of these letters demonstrate that his criminal actions were the result of his addiction and contrary to his character. ODC.responds that the Hearing Com-’ mittee properly recognized that Pozonsky had the burden of proving a causal connection between his addiction and his misconduct pursuant to Braun. However, ODC points out that Pozonsky himself admitted he was not addicted to cocaine at the time he began stealing from the evidence locker, and he “provided no evidence either through his own testimony or in the evidence from any of those who treated him, that there was any connection between an addiction and his willful violation of the criminal law.” ODC Brief at 8. Thus, ODC asserts that Pozonsky is not entitled to mitigation on this basis. In evaluating this.claim, we briefly review the standards our Court utilizes in determining whether evidence of a psychological or substance abuse problem constitutes mitigating evidence in a disciplinary proceeding. The seminal case in this area is Braun, wherein an attorney stole money from a client’s estate which resulted in disciplinary proceedings. The attorney underwent an examinátion by a licensed psychiatrist who diagnosed him with neurotic depression. At his disciplinary hearing, the attorney presented the testimony of that' psychiatrist as well as another who had treated him years earlier for the same condition. The Board found that the attorney’s psychiatric condition was a factor in causing his misconduct. After review of the evidence, our Court adopted the recommendation of the Board based on-our conclusion that the expert psychiatric evidence supported the Board’s finding that the attorney’s neurotic condition “was a causal factor in producing the several elements of his professional misconduct,” and, thus, was properly considered by the B oard as a 'mitigating factor in recommending a suspension, rather than recommending disbarment. Braun, 553 A.2d at 895. In Office of Disciplinary Counsel v. Monsour, 549 Pa. 482, 701 A.2d 556 (1997), our Court ruled that an attorney who was seeking mitigation from disbarment on the .basis of his alcoholism was required under Braun to “establish by clear, and convincing evidence that alcoholism was a causal factor in his misconduct.” Id. at 559. Likewise, an attorney .seeking mitigation under Braun fór a mental illness must prove causation by clear and convincing evidence. Office of Disciplinary Conduct v. Quigley, 161 A.3d 800, 808 (Pa. 2017). Our Court has never held that lay opinions alone, are sufficient to establish that 'an addiction or mental illness was the cause of an attorney’s misconduct. Indeed, recent decisions of our Court have emphasized the critical role of expért testimony in establishing such a causal link. See Czmus, 889 A.2d at 1203 (“The Disciplinary Board may consider as potential mitigation an expert’s opinion establishing á causal connection between the misconduct and an underlying mental infirmity.”); Cappuccio, 48 A.3d at 1241 (refusing to consider attorney’s psychiatric condition as causing the attorney’s misconduct since he “did not present expert testimony meeting the Braun standard” for mitigation). As Disciplinary Counsel highlights, Po-zonsky presented no expert testimony to the Disciplinary Board establishing that he had an addiction to cocaine, or any other psychiatric disorder, which caused him to engage in his thefts and personal use of drug evidence. In a treatment “Progress Report” written by Counselor Stamm, who treated Pozonsky in Alaska after he had committed his crimes, she made a general diagnosis that, at the time she was treating him, Pozonsky had a prior cocaine addiction. However, nowhere therein did she express any opinion that Pozonsky’s addiction caused him to engage in the criminal behavior for which he was being disciplined. See Progress Report, Disciplinaiy Board Hearing, 3/15/2016 (Respondent’s Exhibit 72). Similarly, the letters from counselors Grealish and Ferri, who also treated Pozonsky, did' not express any opinion that Pozonsky’s cocaine addiction caused him to commit his crimes. In sum, because these letters did not establish a causal connection between Pozonsky’s addiction to cocaine and his prior criminal acts, they did not meet the Braun standard, and, thus, they are not a competent basis to mitigate Pozonsky’s discipline. Czmus-, Cappuccio. In the letters from attorneys and friends submitted to the trial court at the time of Pozonsky’s sentencing, the writers expressed their own personal opinions that Pozonsky’s criminal acts were the result of his cocaine addiction because his actions were out of character. However, our Court has never endorsed the novel conclusion that letters from an attorney’s personal friends or other attorneys, who are untrained in the fields of psychiatry, psychology, or substance abuse treatment, are in and of themselves, sufficient to meet the Braun standard. To the contrary, this Court has always relied on expert testimony under Braun to establish that a psychiatric condition or addiction caused the misconduct for which an attorney is being disciplined. Consequently, we will not draw the inference that Pozonsky’s addiction to cocaine was the causal factor in his criminal conduct based solely on the bald, con-clusory opinions provided by attorney acquaintances and friends who, though well meaning, are nevertheless manifestly unqualified to render such a professional opinion. Moreover, and importantly, drawing such an inference in this instance is particularly inappropriate because Pozonsky himself disclaimed during his disciplinary hearing that he was addicted when he began to steal drugs from the evidence locker, and he did not claim that any of his subsequent thefts of cocaine were caused by an addiction. In'response to the question of whether he was addicted to cocaine at the time he began his thefts, Pozonsky answered, “I didn’t think I was.” N.T. Disciplinary Hearing, 3/15/16, at 53. We interpret this statement, made with hindsight and years after the events in question, as a straightforward disavowal that addiction was the motivating factor which caused him to begin stealing the cocaine. Additionally, Pozonsky admitted that he knew he was committing a theft of’ evidence at the time, indicating he was not laboring under any misapprehension as to the criminal nature of his conduct because of an addiction. Id. Pozonsky’s own concessions resolve the question of causation. III. Conclusion In this matter, we find no basis to impose a sanction other than disbarment. There are few transgressions which more seriously undermine the public’s confidence and trust in the integrity of their judicial system, and which are as offensive to the high standards and principles which other members of the bench and bar strive so faithfully to uphold in the performance of their duties, than those committed by Pozonsky. His conduct as a judge has demonstrated his unfitness for the practice of law, and only the sanction of disbarment— the most severe condemnation available to us — can fulfill our Court’s duty to protect the public, as well as vindicate the compelling interest other members of the bench and bar have in ensuring that their -peers maintain the public’s respect and confidence in the legal profession through honorable conduct. We order that Pozonsky be disbarred from the practice of law in this Commonwealth. Pozonsky shall comply with the provisions of Pa.R.D.E. 217, and pay costs to the Board pursuant to Pa.R.D.E. 208(g). Chief Justice Saylor and Justices Dougherty, Wecht and Mundy join the opinion. Justice Baer files a concurring opinion in which Justice Donohue joins. . This matter was reassigned to this author. . These facts were found by the Disciplinary Board and also placed on the record at Po-zónsky's sentencing hearing. . Both the Hearing Committee and the Disciplinary Board credited this explanation, and, as we explain infra, the Board declined to consider Pozonsky's acceptance of this position as an aggravating factor justifying his disbarment. Accordingly, Pozonsky's acceptance of this employment and subsequent departure therefrom, is not a factor in our disposition. . The Board also .found that the manner in which the Hearing Committee uncovered this information, via the extra-record method of an internet search, was ‘'inappropriate.” Disciplinary Board Réport and Recommendations, 12/21/2016, at 10. However the Board determined that the Hearing Committee’s error in acquiring this information in this manner was harmless, given that Pozonsky’s criminal convictions for crimes committed using his judicial office was an aggravating circumstance sufficient to justify his disbarment. . The critical difference between a five-year suspension — the maximum suspension — and disbarment is that, at the end of a five-year suspension, the suspended attorney may resume his or her practice simply by demonstrating , his fitness to practice law. In the Matter of Renfroe, 548 Pa. 101, 695 A.2d 401, 403 (1997). By contrast, an attorney who is disbarred has no expectation of the right to resume practice, and, to obtain reinstatement at the end of the five-year period, he or she must instead show that the magnitude of the breach of trust which resulted in his or her disbarmént “would permit the resumption of practice without a detrimental effect upon the integrity and standing of the bar or the administration of justice nor subversive of the public interest.” Office of Disciplinary Counsel v. Keller, 509 Pa. 573, 506 A.2d 872, 875 (1986) (internal quotation marks omitted). . 42Pa.C.S. § 3151. . Neither Preate nor Eilberg, relied on by Po-zonsky, compels a different result. In Preate, a majority of our Court, over two dissents, suspended Ernest Preate, the former Attorney General of Pennsylvania, for five years. Attorney General Preate accepted nearly $20,000 in campaign contributions from video pokef machine operators while a district attorney of Lackawanna County and as Attorney General, and then failed to disclose them on his campaign finance reports. In Eilberg, Joshua Eil-berg was a Congressman who was also a partner in a law firm. On behalf of a client, his partners directly lobbied another member of Congress to intervene on a matter being handled by a federal agency, Although Eilberg did not himself participate in these, lobbying activities, he, nevertheless, received a check from his partners for a share of the fees paid by the client for his partners' efforts, which was a violation of federal law. He, like Preate, received a five-year- suspension, These cases therefore differ from the instant matter in one critical.aspect: the degree of severity of the attorney misconduct. That is,’ unlike Pozon-sky, neither Preate nor Eilberg directly used the powers of their public offices in order to commit their crimes.