J-S03037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMAR M. COOK | : | |
| | : | |
| Appellant | : | No. 503 MDA 2023 |

Appeal from the Judgment of Sentence Entered February 3, 2023
In the Court of Common Pleas of Huntingdon County Criminal Division at
No(s):  CP-31-CR-0000089-2013

BEFORE:  OLSON, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:  **FILED: MARCH 20, 2024**

Jamar M. Cook ("Cook") appeals pro se from the judgment of sentence imposed by the Huntingdon County Court of Common Pleas after the revocation of his four-year probationary term.  Upon review, we affirm.

On January 29, 2015, Cook entered negotiated nolo contendere pleas to one count of delivery of a controlled substance[1] in four consolidated matters,[2] in exchange for an aggregate sentence of forty-two to eighty-four months of incarceration followed by four years of probation.  The trial court accepted the pleas and sentenced Cook in accordance with the agreement.

_____

[1] 35 P.S. § 780-113(a)(30).

[2]  The other cases are CP-31-CR-0000086-2013, CP-31-CR-0000087-2013, and CP-31-CR-0000088-2013.

Relevantly, at the instant docket, the trial court sentenced Cook to four years of probation[3] to run consecutively to the sentences imposed at the three other dockets. Cook filed pro se notices of appeal in each case; however, this Court quashed them as untimely.

Subsequently, there was a protracted procedural history not relevant to the instant appeal arising out of numerous petitions filed by the Huntingdon County Probation Department detailing various probation violations by Cook. The violations included Cook's arrest on three separate occasions in Philadelphia County for, inter alia, possession of firearms and controlled substances.

In the incident that is the subject of this appeal, the Pennsylvania Board of Probation and Parole received an anonymous tip that drugs and firearms were located inside Cook's residence that he shared with his two brothers in Philadelphia. On January 20, 2023, agents carried out an enforcement action against Cook at the residence, resulting in his detention pending disposition of his probation violations. The Pennsylvania Board of Probation and Parole issued Cook notice of the charges—specifically, his violations of conditions 5a

_____

[3] Cook's sentencing order imposed probation under the supervision of the Huntingdon County Probation Department. On September 16, 2016, the Pennsylvania Board of Probation and Parole accepted Cook for state supervision as a special probation case. Cook was subject to Conditions Governing Special Probation/Parole and a Home Provider Agreement, both of which contained firearm and drug prohibitions.

- 2 -

and 5b of his special probation conditions prohibiting his possession of drugs and firearms—and cited supporting evidence.

On January 23, 2023, the revocation court held a ***Gagnon I***[4] hearing. A public defender initially represented Cook at the start of the hearing but, at his request and following a colloquy by the court, Cook was permitted to proceed pro se. The Commonwealth presented testimony from a parole agent with the Pennsylvania Board of Probation and Parole who stated that drugs, drug paraphernalia, and firearms were found in Cook's residence, which violated special conditions of Cook's probation. Cook cross-examined the agent and further argued to the revocation court that (1) drugs found in his room had not been tested, and thus could not be identified as contraband, and (2) any weapons found in the residence were located in areas to which he did not have access. At the conclusion of the hearing, the revocation court found the Commonwealth established probable cause that Cook violated his probation.

A petition filed the next day by the Huntingdon County Probation Department requested that Cook's probation be revoked, averring the same violations. Petition, 1/24/2023. The revocation court notified Cook of his ***Gagnon II***[5] hearing, which was held on February 3, 2023. Cook was

---

[4] ***Gagnon v. Scarpelli****, 411 U.S. 778 (1973).

[5] ***Id.***

represented by counsel at the hearing. The Commonwealth presented three witnesses, each of whom testified to the contraband found at Cook's residence.

Enchanta Peterson ("Peterson") testified that she supervised Cook as an agent with the Pennsylvania Board of Probation and Parole since October 2022, and met with him twice per month. Peterson was familiar with Cook's special probation conditions as well as home provider agreement, which also stated that he was not permitted to live in a residence with firearms or drugs.[6] Peterson participated in the enforcement action at Cook's residence on January 20, 2023, where she observed drug paraphernalia in a plastic bag and a scale on the dresser in Cook's bedroom. Further, Peterson was present when the search team found a firearm in the hallway closet adjacent to Cook's bedroom.

Thomas Wines ("Wines"), an agent with the Pennsylvania Department of Corrections, testified that he has been an agent for seventeen years and was assigned to the Philadelphia mental health unit. Wines likewise participated in the enforcement action against Cook on January 20, 2023. Wines was initially part of the search team in the residence, where he observed a firearm located in a hall closet adjacent to Cook's bedroom and testified that ammunition and a magazine were found in Cook's bedroom.

---

[6] Cook acknowledged that he was aware of the conditions and he signed both the special probation conditions and home provider agreement.

- 4 -

However, after being in the residence for about five minutes, Wines was called outside the residence for crisis intervention because of Cook's behavior.

James Owens ("Owens"), a special agent assigned to the Pennsylvania Office of the Attorney General, testified that he became involved in the enforcement action against Cook on January 20, 2023, after agents discovered a firearm inside the residence. Agents requested his assistance, following which Owens applied for and obtained a search warrant for the residence, which was executed that day. From Cook's bedroom, the agents seized: several rounds of loose ammunition compatible with the handgun found in an adjacent hall closet; a plastic bag containing suspected marijuana; a plastic bag containing marijuana and crack cocaine packaging; a digital scale; and a black magazine. From the hall closet adjacent to Cook's bedroom, the agents seized: a 9mm handgun loaded with live ammunition; a .38 special revolver with an obliterated serial number, also loaded with live ammunition; loose ammunition; and a yellow follower, which was the inside portion of the black magazine recovered from Cook's bedroom. Agents identified Cook's bedroom after finding four bank cards, one electronic benefits transfer ("EBT") card, and one grocery store card, all in Cook's name, inside the bedroom. Cook also admitted this room was his bedroom.

Cook testified in his own defense at the hearing. He stated that he was a tenant who was only supposed to access his bedroom, the bathroom, and kitchen within the residence. He indicated he had access to the hall closet

adjacent to his bedroom, had opened it twice looking for linens, and after that, never went into that closet. Cook claimed the drug paraphernalia and digital scale found in his bedroom belonged to a friend who had been arrested. According to Cook, the friend asked Cook to retrieve items from the friend's residence because they may have been relevant to the friend's suppression motion. Cook denied knowing firearms were in his residence and, when asked about the ammunition found in his bedroom, he said he did not know how it ended up in his room. Cook admitted that people smoked marijuana in his residence but denied anyone sold drugs there.

The revocation court found Cook had violated his probation by being "at least in constructive possession of firearms and ammunition found within the residence." Order, 2/3/2023; *see also* N.T., 2/3/3023, at 48. The court further found that the Commonwealth satisfied its burden as it related to drug paraphernalia, but not as to the drugs testified to by the agents. *Id.*

The revocation court proceeded directly to sentencing. Cook presented mitigating evidence relating to his behavior during the enforcement action; his efforts to separate himself from bad influences, including obtaining a library card and studying the legal system; his enrollment in college; a plan to start a tailoring business; a plan to move to away from the city and out to the country; and difficulties he experienced while incarcerated. In sentencing Cook, the revocation court specifically stated that it did not give any weight to the agents' testimony relating to Cook's behavior during the enforcement

action. After noting Cook's long supervision history, the revocation court questioned Cook about his mental health history/treatment and rehabilitative needs, and stated that it

> considered all relevant factors for sentencing[,] including but not limited to the testimony and evidence presented this date[, February 3, 2023,] during the **Gagnon II** revocation hearing, the information set forth in the **Gagnon II** revocation packet which [it] incorporate[d] herein, the Sentencing Guidelines, [Cook's] supervision history, [Cook's] current circumstances and his rehabilitation needs.

N.T., 2/3/2023, at 52, 54-55; **see also** Order, 2/3/2023. The revocation court ultimately sentenced Cook to one to two years of incarceration.

Cook filed a counseled motion for reconsideration on February 13, 2023. The revocation court held a hearing on March 3, 2023, wherein Cook, who was represented by counsel, argued for a lesser sentence. While the revocation court imposed a standard range sentence, Cook contended he should have received a sentence closer to the lower end of the six-to-fourteen-month standard range because he has health issues and had an address to which he could be paroled. Cook also testified at the hearing about his good character; entrepreneurial pursuits; library visits to work on his resume and business plan; his proposal to Philadelphia officials on ways to reduce gun violence; plan for housing; and assaults on him while incarcerated.

At the conclusion of the hearing, the revocation court denied Cook's reconsideration motion, stating:

[T]he [c]ourt is acutely aware [] of the supervision history here.

So when you present to the [c]ourt, you speak of ideals. And your ideals are correct. Your ideals are noble. My hope is that you continue, when you are released, to work to achieve those ideals. But the [c]ourt has to consider the serious violation that – your prior supervision history talks about firearm charges, talks about drug charges, talks about what I would consider a poor supervision history. A number of failures to report, a number of absconding from treatment, a number of issuances of arrest warrants, a number of situations where new charges were filed.

Your **Gagnon** [**II**] packet is quite thick, to be honest with you. That was presented to the [c]ourt at the last hearing. I think it's also important to note that the guidelines were six to fourteen months. Even though this sentence is a state sentence – it is towards the high end of the maximum range – it is not the highest end. If the [c]ourt imposed a 14- to 20-month sentence, that would be considered within the standard range as well.

N.T., 3/3/2023, at 8.

Further, the revocation court noted that, in addition to what it set forth in its February 3, 2023 order, it reviewed Cook's supervision history, which "reveal[ed] a number of substantial prior violations, including past firearm and drug charges, absconding from treatment programs, issuance of arrest warrants, positive tests for cocaine, PCP, and THC, failures to report, and generally non-complian[t] behaviors related to his supervision." **Id.** at 9-10; **see also** Order, 3/3/2023, at 1-2 (unpaginated); Pennsylvania Department of Corrections Transmittal Letter packet, 7/19/2023 (attaching Supervision History, 1/23/2023). The revocation court further explained that "[p]art of the [c]ourt's rationale in imposing the state sentence – and minimum state sentence – upon [Cook] is because the [c]ourt did factor in that prior

- 8 -

supervision history and whether this [c]ourt believed that [Cook] would need the higher level of structure and supervision."  N.T., 3/3/2023, at 11.

Cook filed a notice of appeal pro se.[7]  Both Cook and the revocation court complied with Pa.R.A.P. 1925.  On appeal, Cook asks us to review claims relating to the trial court's jurisdiction, his right to a speedy trial pursuant to Pa.R.Crim. 600, the legality of his original and revocation-of-probation sentences, the sufficiency of the notice of his *Gagnon I* and *Gagnon II* hearings, and the sufficiency of the evidence upon which his violation of probation was based.  Cook's Brief at 12-13, 25-31.

Before we may reach the merits of Cook's issues, however, we must first consider whether Cook timely filed his appeal.  Cook's revocation-of-probation sentence was entered on February 3, 2023, and he therefore had until March 6, 2023, to timely file his notice of appeal.  Pa.R.A.P. 903(a) (stating "the notice of appeal … shall be filed within 30 days after the entry of the order from which the appeal is taken").[8]  This is true regardless of whether he filed a post-sentence motion.  *See* Pa.R.Crim.P. 708(E) ("The filing of a

---

[7]  Cook included in his notice of appeal a request to proceed pro se, which the court granted after a hearing on April 18, 2023.  Notice of Appeal, 4/3/2023; Order, 4/18/2023.

[8]  We note that thirty days from February 3, 2023, is Sunday, March 5, 2023. *See* Pa.R.A.P. 107 ("In the construction of the Pennsylvania Rules of Appellate Procedure, the principles set forth in Pa.R.J.A. 104 to 115 shall be observed."); Pa.R.J.A. 107(b) (omitting weekends and legal holidays from the computation of time when the last day of a time period falls on such a day).

motion to modify sentence will not toll the 30-day appeal period."); **see also**

***Commonwealth v. Parlante***, 823 A.2d 927, 929 (Pa. Super. 2003) (stating

"if an appellant chooses to file a motion to modify her revocation sentence,

she does not receive an additional 30 days to file an appeal from the date her

motion is denied"). Cook's notice of appeal, filed on April 3, 2023, is therefore

facially untimely.

On September 7, 2023, this Court issued an Order directing Cook to

show cause as to why his appeal should not be quashed as untimely. Order,

9/7/2023; **see also** Pa.R.A.P 105(b) (stating an appellate court may not

enlarge the time for filing a notice of appeal). Cook responded, arguing that

the revocation court failed to advise him of his appellate rights or,

alternatively, that any information provided to him was insufficient under

Pa.R.Crim.P. 708. Cook's Reply, 9/19/2023 at 1. Cook asserts he was under

the mistaken impression that a timely motion to modify his sentence imposed

after revocation of probation tolled the thirty-day appeal period and that he

was not advised otherwise. ***Id.*** at 2-3.

The record reflects that the revocation court properly advised Cook of

his appellate rights at his ***Gagnon II*** hearing held on February 3, 2023. N.T.,

2/3/2023 at 55 (stating Cook "is advised he has the right to file a notice of

appeal within 30 days of the date of this Order"). However, the record further

reflects that after decision on Cook's motion to modify his sentence, counsel

for Cook advised him on the record that he had "30 days to appeal the

- 10 -

[c]ourt's sentence." ***Id.*** at 12. The revocation court did not correct counsel's statement.

Although counsel's statement was made in the thirty-day window when Cook still had time to file a timely notice of appeal, it could reasonably have been construed as incorrectly advising Cook that he had thirty days from the denial of his motion to reconsider to file a notice of appeal. We therefore conclude that these circumstances amount to a breakdown in court operations, which excuse the untimeliness of Cook's notice of appeal. ***See Parlante***, 823 A.2d at 929 (declining to quash facially untimely appeal from revocation-of-probation sentence where court misadvised appellant she had thirty days to appeal her sentence after the denial of any post-sentence motion she filed).

This Court's scope of review for an appeal from a revocation proceeding is limited to the validity of the proceeding, the legality of the sentence imposed, and the discretionary aspects of sentencing. ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1034-35 (Pa. Super. 2013) (en banc). "Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." ***Commonwealth v. Colon***, 102 A.3d 1033, 1041 (Pa. Super. 2014) (citation and quotation marks omitted).

To begin, we observe that Cook raises several claims stemming from the proceedings underlying his negotiated nolo contendere plea and sentence. *See* Cook's Brief at 24-27 (challenging the trial court's subject matter jurisdiction over his preliminary hearing and original sentencing hearing); *id.* at 27-28 (claiming violation of his speedy trial rights for his underlying offenses pursuant to Pa.R.Crim.P. 600); *id.* at 28-30 (claiming the sentences imposed following the entry of his negotiated guilty plea were illegal). We lack jurisdiction to review these claims. *See Cartrette*, 83 A.3d at 1034-35; *see also Commonwealth v. Beasley*, 570 A.2d 1336 (Pa. Super. 1990) (stating that in an appeal from a sentence imposed following probation revocation, any attack on the underlying conviction or sentence must be raised in a petition filed pursuant to Post Conviction Relief Act ("PCRA")).

Cook further claims that his revocation sentence is illegal because the revocation court considered factors contained in a *Gagnon II* packet, which Cook claims he did not receive. Cook's Brief at 29. In Cook's estimation, the revocation court's reliance upon the factors contained in the packet was improper. *Id.* at 30.

Cook's claim does not implicate a challenge to the legality of his revocation sentence but rather a challenge to its discretionary aspects. *See Commonwealth v. Prinkey*, 277 A.3d 554, 562-64 (Pa. 2022) (stating, "if the challenge is not to the existence of certain [trial court] authority but to the exercise of that authority, then the challenge goes to the discretionary

aspects of a sentence, not to its legality") (footnote omitted); **Commonwealth v. Downing**, 990 A.2d 788, 792 (Pa. Super. 2010) (stating that a claim that the trial court considered improper factors at sentencing implicates the discretionary aspects of sentencing).

"An appellant wishing to appeal the discretionary aspects of a probation-revocation sentence has no absolute right to do so but, rather, must petition this Court for permission to do so." **Commonwealth v. Starr**, 234 A.3d 755, 759 (Pa. Super. 2020) (citation and quotation marks omitted).

> Before this Court can address such a discretionary challenge, an appellant must invoke this Court's jurisdiction by establishing that (1) the appeal was timely filed; (2) the challenge was properly preserved by objecting during the revocation sentencing or in a post-sentence motion; (3) his or her brief includes a concise statement of the reasons relied upon for allowance of appeal of the discretionary aspects of the sentence pursuant to Pa.R.A.P. 2119(f); and (4) the concise statement raises a substantial question that the sentence is inappropriate under the Sentencing Code.

**Starr**, 234 A.3d at 759 (citation omitted).

Instantly, Cook failed to satisfy the second requirement. While he did file a motion for reconsideration, he did not allege the revocation court relied on "factors that may be objectionable," but instead argued for a lesser sentence because (1) he had secured an appropriate home address, (2) the sentencing guidelines call for a standard range sentence of six to fourteen months, and (3) "the facts of this case warrant a sentence in the low-end of the resentencing guidelines." Motion for Reconsideration, 2/13/2023, ¶ 3.

Cook likewise failed to argue that the revocation court relied on impermissible factors at the revocation hearing.[9]  ***See generally*** N.T., 2/3/2023.  Cook's claim is therefore waived.  ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) ("Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed.").[10]

_____

[9]  At the reconsideration hearing held on March 3, 2023, Cook objected to the revocation court's reference to his prior firearm charges, saying he was not convicted of those charges.  N.T., 3/3/2023, at 10.  In his brief, Cook fails to specify what impermissible factors the revocation court may have considered, makes no reference to the reconsideration hearing or any firearms charges, and offers no legal analysis.  ***See*** Cook's Brief at 29-30.  To the extent Cook claims the court's consideration of firearms charges at the reconsideration hearing was impermissible, we find the issue waived for failure to adequately develop it in his appellate brief.  ***Commonwealth v. Taylor***, 277 A.3d 577, 590-91 (Pa. Super. 2022) ("Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review that claim is waived.") (citation, quotation marks, and brackets omitted).

[10]  Even if Cook had satisfied the first three requirements for review of the discretionary aspects of his revocation sentence, he would not be entitled to relief.  ***Commonwealth v. Kimbrough***, 872 A.2d 1244, 1263 (Pa. Super. 2005) (stating where a "sentencing judge imposed sentences that were *within* the standard range of the applicable guidelines, and that he fully stated his reasons for imposing those sentences, no substantial question has been presented") (emphasis in original).  Cook admitted that his sentence is within the standard range of the guidelines, contending only that it should have been in the lower rather than the upper end of the standard range.  N.T., 3/3/2023, at 1.  Moreover, as detailed above, the revocation court placed its considerations on the record and permitted Cook's testimony regarding mitigating circumstances.  N.T. 2/3/2023, at 49-55; ***see also*** N.T., 3/3/2023, at 2-4, 6, 8-11.

Next, Cook appears to contend that he did not receive timely notice of the petition for revocation. Cook's Brief at 30. He claims that "[b]ut for the lack of notice, [he] could have prepared his defense and been alerted to what discovery to request." *Id.* He further claims he was prejudiced by his counsel's failure to raise the issue of Cook's failure to receive a copy of the petition for revocation "until well after the revocation proceeding." *Id.* at 30-31.

Due process in revocation-of-probation proceedings "requires a determination at a pre-revocation hearing, also known as a *Gagnon I* hearing, that probable cause exists to believe that a violation has been committed." *Commonwealth v. Baumann*, 307 A.3d 1231, 1238 (Pa. Super. 2023) (citation, quotation marks, and brackets omitted). "Where a finding of probable cause is made, a second, more comprehensive hearing, a *Gagnon II* hearing, is required before a final revocation decision can be made." *Id.* (citation and quotation marks omitted). "*Gagnon II* hearings entail two separate considerations. First, it must be determined whether the probationer violated a condition of probation, as demonstrated by evidence containing 'probative value.'" *Id.* (citation omitted). "Second, if it is found that the probationer did violate a condition of probation, the court must determine whether the probationer should be recommitted to prison or other steps be taken to protect society and improve chances of rehabilitation." *Id.*

(citation, internal quotation marks, and brackets omitted). Probationers are afforded additional due process safeguards at **Gagnon II** hearings, including:

> (a) written notice of the claimed violations of probation or parole; (b) disclosure to the probationer or parolee of evidence against him; (c) opportunity to be heard in person and to present witness and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking probation or parole.

**Id.** (ellipsis and citation omitted); **see also** Pa.R.Crim.P. 708, cmt. (stating **Gagnon II** proceedings are "initiated by a written request for revocation filed with the clerk of courts"); Pa.R.Crim.P. 708(A).

> The purpose of requiring prior written notice is to ensure that the probationer can sufficiently prepare his case, both against the allegations of violations, and against the argument that the violations, if proved, demonstrate that probation is no longer an effective rehabilitative tool and should be revoked. The requirement bears directly on the ability to contest revocation.

**Baumann**, 307 A.3d at 1238-39 (citations omitted).

The record contains a Pennsylvania Board of Probation and Parole Notice of Charges and Hearing addressed to Cook, which states: "This notice is in reference to your upcoming hearing." **See** Pennsylvania Department of Corrections Transmittal Letter packet, 7/19/2023 (attaching Notice of Charges and Hearing Special Probation/Parole, 1/23/2023). The notice checked the box for "**Gagnon I** hearing" and listed the hearing date and time. **Id.** It further specified the charges—violations of conditions 5a and 5b of Cook's

special probation relating to drugs and firearms—and the supporting evidence. *Id.* Cook appeared at the proceeding, where he heard the alleged probation violations lodged against him. N.T., 1/23/2023, at 5. The next day, the Huntingdon County Probation Department filed the petition to revoke his probation, reiterating the same allegations. Petition, 1/24/2023. The revocation court then issued notice of the ***Gagnon II*** hearing to Cook, directing him to appear on February 3, 2023. Notice of Revocation Hearing, 1/24/2023. The parties appeared before the revocation court for the ***Gagnon II*** hearing and the record makes clear that Cook had an opportunity to cross-examine the Commonwealth's witnesses and testify in his own defense. N.T., 2/3/2023, at 10-12, 23-28, 33-44.

Based on the foregoing, we agree with the revocation court's determination that Cook received adequate notice to meet due process requirements.[11]

---

[11] To the extent Cook claims counsel was ineffective for failing to raise a due process claim, ***see*** Cook's Brief at 30-31, such a claim is to be raised in a petition filed pursuant to the Post Conviction Relief Act ("PCRA") and not on direct appeal.

> Pennsylvania law has been clear since our Supreme Court decided [***Commonwealth v.***] ***Grant***[, 813 A.2d 726 (Pa. 2002),] … that ineffective assistance of counsel claims must be deferred to PCRA review. The Court reaffirmed ten years ago in [***Commonwealth v.***] ***Holmes***[, 79 A.3d 562 (Pa. 2013),] that the exceptions to this general rule are narrow and limited to a very specific set of circumstances[.]

*(Footnote Continued Next Page)*

- 17 -

In his final claim, Cook purports to challenge the sufficiency of the evidence to support the revocation of his probation. Cook's Brief at 31. According to Cook, the Commonwealth's failure to "present any photos or other physical evidence" at the revocation hearing resulted in "nothing but pure faith" to support "that agents found what they say they found where they say they found it." *Id.* at 31.

Cook's argument that the agents' testimonies were unreliable because they were not corroborated by physical evidence is a challenge to the weight of the evidence, not its sufficiency, to support revocation of his probation. *Commonwealth v. Thomas*, 194 A.3d 159, 167 (Pa. Super. 2018) ("It is well-settled that credibility determinations go to the weight, not the sufficiency of the evidence.") (citation omitted). Such a challenge is not properly before us. *See Cartrette*, 83 A.3d at 1034-35 (stating this Court's review of a probation revocation proceeding is limited to the validity of the proceeding, the legality of the sentence imposed, and the discretionary aspects of sentencing); *see also Commonwealth v. Mullins*, 918 A.2d 82, 85 (Pa. 2007) (noting that the standards for a probation revocation hearing are different from a trial, as the revocation proceeding "takes place without a jury,

_____

*Commonwealth v. Watson*, --- A.3d ---, 2024 WL 316438 at *4 (Pa. Super. Jan. 29, 2024) (emphasis omitted). Cook makes no argument his claim of counsel's alleged ineffectiveness is properly before us on appeal from his judgment of sentence.

- 18 -

with a lower burden of proof, and with fewer due process protections")
(citations omitted).[12]

Based on the foregoing, the issues Cook raised on appeal do not merit
relief and we affirm the judgment of sentence.[13]

_____

[12] Even if Cook properly challenged the sufficiency of the evidence, the law is clear that "the uncorroborated testimony of a single witness is sufficient" for the court to find a defendant committed the act charged. **See Commonwealth v. Johnson**, 180 A.3d 474, 481 (Pa. Super. 2018). As detailed above, the Commonwealth here provided sufficient evidence through the testimonies of the three agents. The revocation court rejected Cook's claim of error, crediting the agents' testimony over Cook's. Rule 1925(a) Opinion, 7/19/2023, at 16. In reviewing a challenge to the sufficiency of the evidence, this Court may not weigh the evidence and substitute its judgment for the factfinder. **Commonwealth v. Gause**, 164 A.3d 532, 540 (Pa. Super. 2017 (en banc) (citation omitted). The revocation court, sitting as factfinder, makes credibility determinations and is free to believe all, part, or none of the evidence. **See id.** at 541 (citation omitted).

[13] On January 16, 2024, Cook filed in this Court two separately docketed applications for relief. In one, he seeks relief from this Court's quashal of his appeals filed from the judgments of sentence entered on January 29, 2015, asserting that the prisoner mailbox rule was improperly applied. Application for Extraordinary Relief, 1/16/2024, ¶ 1. Cook further claims that his ability to pursue a PCRA petition was impeded by a Pennsylvania Board of Probation and Parole agent who mistakenly identified Cook as a sex offender to a landlord while investigating a potential residence under his home provider agreement. **Id.**, ¶ 2. According to Cook, this mistaken identity resulted in Cook's inability to maintain stability in his life and communicate with his appellate counsel. **Id.** Cook also claims an erroneous docket entry and criminal history record resulted in his denial of parole. **Id.**, ¶¶ 3-4. As these claims are not properly before us in this appeal, we deny said application.

In the other application, Cook complains that the Commonwealth's brief fails to address all the issues raised in his Pa.R.A.P. 1925(b) statement. Application for Relief Request for Judgment by Default, 1/16/2024, ¶ A. The remainder of the application is a reply to the Commonwealth's brief, wherein he essentially reiterates the same points he made in either his brief or Rule
*(Footnote Continued Next Page)*

Applications for Relief denied.  Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/20/2024

---

1925(b) statement.  ***Id.***, ¶¶ B1-B17.  In other words, although styled as an application for relief, in substance it is a reply to the Commonwealth's responsive brief on appeal.  The law is clear that any reply brief filed by an appellant must be filed within fourteen days of the filing of the appellee's brief. Pa.R.A.P. 2113. The certificate of service for the Commonwealth's brief indicates it served Cook on October 27, 2023.  Cook's application was eighty-one days later.  We therefore deny said application for failure to comply with our rules of appellate procedure.