J-A19008-23

2023 PA Super 276

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JONATHON BAUMANN | : | |
| | : | |
| Appellant | : | No. 1923 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 27, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000208-2020

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JONATHON BAUMANN | : | |
| | : | |
| Appellant | : | No. 1925 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 27, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000209-2020,
CP-51-CR-0000210-2020

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JONATHON BAUMANN | : | |
| | : | |
| Appellant | : | No. 1926 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 27, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000209-2020,
CP-51-CR-0000210-2020

BEFORE: BOWES, J., STABILE, J., and PELLEGRINI, J.[*]

OPINION BY BOWES, J.:                    **FILED DECEMBER 28, 2023**

Jonathon Baumann appeals from the judgment of sentence of eleven and one-half to twenty-three months of imprisonment imposed after his three-year probationary term was revoked. For the reasons that follow, we reverse the revocation order, vacate the June 2022 violation of probation ("VOP") judgment of sentence, and re-impose Appellant's January 2021 sentence.

On January 21, 2021, Appellant entered negotiated guilty pleas in three consolidated matters. In total, he pled guilty to one count each of unlawful contact with a minor, indecent exposure, and impersonating a public servant, and two counts of luring a child into a motor vehicle. He was sentenced to serve eleven and one-half to twenty-three months of incarceration, followed by three years of county probation. The conditions of his probation mandated that he: stay away from the victims; pay imposed mandatory court costs; register with the Pennsylvania State Police and abide by all Tier II sexual offender requirements; comply with DNA, finger printing, palm printing, and photo requirements; avoid unsupervised contact with minors; and submit to supervision by the Sexual Offender's Unit. *See* Sentencing Order, 1/21/21, at 1.

Appellant was released from custody on November 17, 2021, and immediately began the probationary portion of his sentence. The condition

_____

[*] Retired Senior Judge assigned to the Superior Court.

regarding Appellant's supervision by the Sexual Offender's Unit required his participation in the TAP program, which is a form of therapeutic treatment for sexual offenders to reduce the likelihood of reoffending. In order to comply with the requirements of the TAP program, Appellant was required to undergo an intake assessment. After the assessment, Appellant had three options: (1) admit to his sexual offenses and initiate treatment; (2) enter into treatment for those who initially deny their offenses, with the condition that he admit to them at some point; or (3) undergo a polygraph examination which, if passed, would remove the need for treatment. *See* N.T. Hearing, 6/27/22, at 9–10; N.T. Hearing, 7/25/22, at 8–10; *Gagnon*[1] *II* Summary, 6/27/22.

Due to issues with insurance coverage, Appellant had to reschedule his first intake appointment from March 2022 to April 2022. Appellant opted to pay with cash at his April appointment, but due to his late arrival, the appointment was rescheduled to June 1, 2022. *See* N.T. Hearing, 5/4/22, at 5–6, 10. In the meantime, Appellant's probation officer requested a status hearing on April 16, 2022, in order to monitor Appellant's compliance with his treatment requirements. The probation officer filed a *Gagnon II* summary,

---

[1] As will be discussed more fully *infra*, "in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the United States Supreme Court held that probationers are entitled to two hearings when a violation of probation is alleged." *Commonwealth v. Mayfield*, 247 A.3d 1002, 1003 n.2 (Pa. 2021) (citation altered). These are colloquially referred to as *Gagnon I* and *Gagnon II* hearings.

which detailed Appellant's intake difficulties and noted twenty-one outstanding traffic warrants in Montgomery and Bucks counties. It did not, however, list any direct violations of the conditions of his probation. The summary recommended a thirty-day "status of treatment compliance." *Gagnon II* Summary, 4/26/22.

On May 4, 2022, the VOP court held Appellant's first probation status hearing. Appellant explained that while he secured full-time employment, he was unsuccessful in establishing a permanent residence. The court directed Appellant to provide a stable address and documentation reflecting his employment status to his probation officer. As for the TAP program, Appellant indicated that he was confused by insurance requirements and was late to his April intake appointment because he got lost while traveling there. Appellant stated that he had already rescheduled and paid for his intake appointment, and he intended to arrive early to ensure the appointment proceeded successfully. *See* N.T. Hearing, 5/4/22, at 9–16.

Appellant's probation officer relayed to the court Appellant's intention to undergo a polygraph examination, which cost $300.00 to administer. To avoid delaying his treatment any further, the Commonwealth requested that Appellant have the funds with him at his intake appointment. The VOP court did not instruct Appellant to do anything specific regarding the polygraph examination at the hearing or by written order thereafter. However, an entry on the docket from the hearing date stated in pertinent part: "Defendant

- 4 -

ordered to provide stable home address within [thirty] days of today's date to probation officer. Defendant ordered to provide clear and concise documentation regarding place of employment to probation officer. Defendant ordered to attend TAP intake evaluation appointment on 6/1/22. Funds for possible polygraph must be in place." Docket Entry, 5/4/22.

Appellant's second probation status hearing was held on June 27, 2022. The *Gagnon II* summary filed that day, which again contained no direct violations of the conditions of probation, relayed the following:

> After court, this officer spoke with a staff member at TAP informing them that [Appellant] is required to pay for his polygraph at his intake appointment. Due to the fact that [he] was going to be paying for his intake as he does not have Philadelphia insurance, staff members decided to skip over the formal intake and send [him] straight to the polygraph[;] this way, this officer had as much information as possible for today's hearing. [Appellant's] polygraph was scheduled for 6/07/2022 at 1:45PM. On 5/27/2022, [Appellant] left this officer a voicemail stating he spoke with his lawyer and it is in his best interest to no longer take the polygraph. This officer then contacted TAP to ensure [he] could still attend his original intake scheduled for 6/01/2022, which he was able to [do]. [Appellant] was given the option to enter into treatment for individuals who deny their offenses, schedule a polygraph, or provide an admission. [He] opted to participate in weekly group therapy for individuals who deny part or all of their offenses. [Appellant] had his first session on 6/16/2022. A copy of [Appellant's] intake assessment will be made available at this hearing.

*Gagnon II* Summary, 6/27/22 (cleaned up).

At the hearing, Appellant's probation officer confirmed that Appellant provided proof of residence and the requested documentation reflecting his employment status. With respect to the TAP treatment program, Appellant

explained to the court that he "wasn't under the impression that [the polygraph] was court ordered. . . . They told me it was up to me. . . . But I decided I was going to admit to my crimes and just go to therapy. So they told me I don't have to take the polygraph." N.T. Hearing, 6/27/22, at 7–9.

At the conclusion of the hearing, the VOP court found Appellant had violated his probation by failing to take the polygraph. Specifically, the court stated that "[Appellant] w[as] ordered by this Court to . . . secure the funding at a minimum with the polygraph test if [he] did not take it[.]" *Id*. at 15. Appellant expressed that he was confused about what was required for the TAP program and that he "can pay for [a polygraph]. It's no problem." *Id*. at 18. Unmoved by this, the court revoked Appellant's probation and sentenced him to another term of eleven-and-one-half to twenty-three months in jail, followed by two years of probation. *Id*. at 18–19.

Appellant filed for reconsideration, which the court denied. This timely appeal followed.[2] Both Appellant and the VOP court complied with Pa.R.A.P. 1925. Appellant raises three issues for our consideration:

> 1) Did not the [VOP] court err when it found [Appellant] in violation of his probation for failure to comply with sex offender treatment or to obtain a polygraph as part of that treatment where neither requirement was a condition of his probation?
>
> 2) Was not the [VOP] court's assertion for the first time in its opinion to this Court that it found [Appellant] in violation of

---

[2] Appellant filed a notice of appeal at each implicated docket. We subsequently granted his request to consolidate the appeals.

his probation for failing to register as a sex offender and other issues prior to May 4, 2022 an error and abuse of discretion because the court provided him with no notice that he faced violation for these issues and no evidence of such violations was presented during the hearings?

3) Was not the new probationary sentence for impersonating a public servant (docket CP-51-CR-0000209-2020) illegal where [Appellant] had already completed his sentence prior to the revocation hearings?

Appellant's brief at 3.

When reviewing a court's decision to revoke probation, we employ the following principles:

The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment—a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

When assessing whether to revoke probation, the trial court must balance the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison. In order to uphold a revocation of probation, the Commonwealth must show by a preponderance of the evidence that the defendant violated his probation.

*Commonwealth v. Simmons*, 56 A.3d 1280, 1283–84 (Pa.Super. 2012) (cleaned up).

Appellant first contends that the VOP court erred in revoking his probation for failure to comply with sex offender treatment or to obtain a polygraph, as neither requirement was a condition of his probation. *See* Appellant's brief at 19. For its part, the Commonwealth asserts that the VOP

court erred in revoking Appellant's probation when he did not commit a new crime or violate a specific condition of probation by failing to take the polygraph examination. *See* Commonwealth's brief at 9. We agree that Appellant was not required to undergo the polygraph examination as a condition of his probation, and therefore the court erred in revoking Appellant's probation on this basis.

It is well-established in our Commonwealth that only upon proof of a violation of the "specified conditions" of a probation order may a court revoke the defendant's probation. 42 Pa.C.S. § 9771(b). Our Supreme Court has held that "the VOP court must find, based on the preponderance of the evidence, that the probationer violated a specific condition of probation or committed a new crime to be found in violation." *Commonwealth v. Foster*, 214 A.3d 1240, 1243 (Pa. 2019) (cleaned up). Pennsylvania Rule of Criminal Procedure 708 likewise provides that probation shall not be revoked absent "a finding of record that the defendant violated a condition of probation[.]" Pa.R.Crim.P. 708(B)(2).

At Appellant's June 27, 2022, probation status hearing, the court was clear that it revoked Appellant's probation for failing to undergo a polygraph examination. *See* N.T. Hearing, 6/27/22, at 14–16 (focusing on "specifically, his failure to participate in the polygraph testing and examination"). We note that Appellant committed sexually predatory crimes and sex offender treatment was a valid condition of his probation. The requirement that

Appellant submit to the TAP treatment program was an extension of sex offender treatment and likewise a valid condition. *Id*. However, submitting to a polygraph examination was but one of three options available to Appellant in order to comply with the TAP program and its treatment regimens. *Id*. at 10; *Gagnon II* Summary, 6/27/22. At no point was Appellant required to undergo a polygraph examination as his sole means of complying with the conditions of his probation. Appellant remained in compliance when he began treatment with the deniers therapy group. *See* N.T. Hearing, 6/27/22, at 9.

In its Rule 1925(a) opinion, the VOP court contended that it modified the conditions of Appellant's probation during the May 2022 status hearing by imposing the additional requirement that Appellant have funds available for, and undergo, a polygraph examination. *See* VOP Court Opinion, 11/2/22, at 14–15. We observe that the court never expressly instructed Appellant at the hearing or by written order that the polygraph was mandatory. *Id*. at 19 (directing Appellant merely to "be prepared, otherwise" to undergo a polygraph examination). Rather, the only place where the VOP court purported to impose this condition was through the following docket entry: "Defendant ordered to attend TAP intake evaluation appointment on 6/1/22. **Funds for possible polygraph must be in place**." Docket Entry, 5/4/22 (emphasis added).

Based on the foregoing, we readily agree with Appellant and the Commonwealth that the VOP court revoked Appellant's probation on the basis

of a condition, *i.e.*, taking the polygraph examination, that was never imposed. Such action is not only violative of 42 Pa.C.S. § 9771(b), which necessitates proof of violations of a specified condition of probation to warrant revocation, but it also undermines this Commonwealth's jurisprudence governing probation revocation. **See, e.g.**, **Foster**, **supra** at 1250-51. As such, we hold that the VOP court erred in finding Appellant in violation of his probation.

Appellant next asserts the VOP court abused its discretion when, in its Rule 1925(a) opinion to this Court, it relied upon alleged probation violations that were not charged in the written notice, including violations of sex offender registration requirements, failure to provide proof of residence to his probation officer, and outstanding traffic tickets, to support its revocation order. Appellant contends he was never provided notice that he faced a probation violation for these issues, and that no evidence of such violations was presented at his status hearings. **See** Appellant's brief at 26-28. By the same token, the Commonwealth asserts that "to the extent the [VOP] court purports to rely on those grounds for revocation, it improperly infringes on [Appellant's] due process rights." Commonwealth's brief at 12 n.3. Once again, we agree.

Due process in VOP proceedings "requires a determination at a pre-revocation hearing, [also known as] a **Gagnon I** hearing, that probable cause exists to believe that a violation has been committed." **Commonwealth v. Sims**, 770 A.2d 346, 349 (Pa.Super. 2001) (cleaned up). "Where a finding of

probable cause is made, a second, more comprehensive hearing, a *Gagnon II* hearing, is required before a final revocation decision can be made." *Commonwealth v. Ferguson*, 761 A.2d 613, 617 (Pa.Super. 2000) (cleaned up). *Gagnon II* hearings entail two separate considerations. First, it must be determined whether the probationer violated a condition of probation, as demonstrated by evidence containing "probative value." *Ferguson*, *supra* at 617 (cleaned up). Second, if it is found that the probationer did violate a condition of probation, the court must determine whether the "probationer [should] be recommitted to prison or . . . other steps be taken to protect society and improve chances of rehabilitation[.]" *Id*. (cleaned up).

In light of these more comprehensive considerations, *Gagnon II* hearings afford the probationer additional due process safeguards, such as:

> (a) **written notice of the claimed violations of probation or parole**; (b) disclosure to the probationer or parolee of evidence against him; (c) opportunity to be heard in person and to present witness and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body . . . ; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking probation or parole.

*Ferguson*, *supra* at 617-18 (cleaned up, emphasis added). Indeed, pursuant to Pa.R.Crim.P. 708(A), *Gagnon II* proceedings must be "initiated by a written request for revocation filed with the clerk of courts." Pa.R.Crim.P. 708 *Comment*. We have expounded upon the written notice requirement as follows:

> The purpose of requiring prior written notice is to ensure that the probationer can sufficiently prepare his case, both against the allegations of violations, and against the argument that the violations, if proved, demonstrate that probation is no longer an effective rehabilitative tool and should be revoked. The requirement bears directly on the ability to contest revocation.

*Commonwealth v. Carter*, 523 A.2d 779, 780 (Pa.Super. 1987) (cleaned up). *See also Commonwealth v. Gaiski*, 272 A.3d 485, 2022 WL 165958, at *7 (Pa.Super. 2022) (non-precedential decision) (same).

This Court has held that the VOP court erred if it revoked probation based upon a violation of which the defendant had no written notice. *See Carter*, *supra* at 781 (determining the court erred in finding Carter had committed a technical violation where "the record demonstrate[d] that Carter received no notice of any alleged technical violation of his probation before he appeared before the court"); *Gaiski*, *supra* at *7 (finding the court erred in revoking Gaiski's probation based upon alleged violations where "[t]here [wa]s no evidence in the record that these other purported bases for revoking [Gaiski's] probation were included in the revocation petition, or presented . . . at the *Gagnon I* hearing").

In this case, revocation proceedings were never requested pursuant to Pa.R.Crim.P. 708(A), and the proceedings unfolding in the VOP court wholly and utterly failed to comply with the Rules of Criminal Procedure and *Gagnon*. Even if we were to assume that the *Gagnon II* summaries complied with Rule 708(A) and the written notice requirement, the VOP court was explicit during what purported to be a *Gagnon II* hearing that its decision to revoke

Appellant's probation was solely based upon his failure to undergo a polygraph examination. *See* N.T. Hearing, 6/27/22, at 14–16 ("His failure and lack of cooperation in doing so and, specifically, his failure to participate in the polygraph testing and examination."). However, in its opinion to this Court, the VOP court maintained that it also found Appellant violated his probation for: (1) failing to provide a verifiable home address and register as a sex offender; (2) failing to report as required under the relevant sexual offender registration law; (3) failing to provide his work address; (4) having twenty-one outstanding traffic warrants in Montgomery and Bucks counties; and (5) migrating outside Philadelphia County. *See* VOP Court Opinion, 11/2/22, at 7.

The VOP court's purported reliance on these bases is belied by the certified record. Neither the April nor the June *Gagnon II* summaries issued by the probation office listed any direct violations of probation of which Appellant would have been on notice. The April summary referenced the traffic warrants. Even assuming that the traffic tickets constituted a violation of a specific condition of probation and the April summary provided Appellant written notice, they cannot support a probation violation because the **sole** evidence presented by the Commonwealth at the purported *Gagnon II* hearing, on which the VOP court indisputably and exclusively relied in revoking Appellant's probation, was his failure to undergo the polygraph examination. Plainly, the additional purported grounds for revoking Appellant's probation

- 13 -

were embedded into the VOP court's Rule 1925(a) opinion in response to Appellant's claim that his failure to undergo the polygraph examination did not violate a specific condition of his probation. Those reasons were raised for the first time by the VOP court in response to this appeal. Accordingly, we conclude the VOP court circumvented the proper procedures attendant to probation revocations and erred to the extent it relied upon these bases in revoking Appellant's probation.

Based on the foregoing, we reverse the order revoking Appellant's probation, vacate the June 27, 2022 VOP judgment of sentence, and re-impose Appellant's January 21, 2021 sentence. Since we have vacated the VOP sentence, we need not address the third issue raised by Appellant.[3]

Order reversed. VOP judgment of sentence vacated. Original judgment of sentence reinstated.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/28/2023

---

[3] We note with dismay that the VOP court and, regrettably, this Court, denied Appellant's requests for release on bail pending appeal. As a result, Appellant was forced to serve a sentence of imprisonment that never should have been imposed in the first place.