J-S48033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALEXIS WEARY | : | |
| | : | |
| Appellant | : | No. 511 EDA 2024 |

Appeal from the Judgment of Sentence Entered January 5, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009727-2021

BEFORE: STABILE, J., NICHOLS, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED JANUARY 28, 2025**

Appellant, Alexis Weary, appeals from the judgment of sentence imposed after her term of parole was revoked and she was resentenced to serve the remainder of her original sentence of 3 to 23 months' incarceration, followed by 6 years' probation. On appeal, Appellant alleges that her parole was improperly revoked when the Commonwealth failed to provide her written notice of the alleged parole violation. After careful review, we vacate Appellant's judgment of sentence and remand for a new revocation hearing.

The trial court summarized the facts and procedural history of this case, as follows:

### I.      RELEVANT PROCEDURAL BACKGROUND

On April 26, 2023, [Appellant] pleaded guilty to a felony-[one] charge of aggravated assault.[1] On June 28, 2023, this [c]ourt sentenced [Appellant] to a term of 11½ to 23 months' incarceration, followed by 6 years' probation. On July 5, 2023, [Appellant] filed a motion for reconsideration of [her] sentence.

On July 24, 2023, following a hearing on this motion, the [c]ourt granted reconsideration of its original sentence, and resentenced [Appellant] to a term of 3 to 23 months' incarceration, followed by 6 years' probation.

[1] 18 Pa.C.S.[] § 2702(a)(1).

On November 22, 2023, [Appellant] was granted parole and assigned to the parole/probation supervision of Officer Angela Lacey ("Officer Lacey"). On December 8, 2023, this [c]ourt conducted a hearing and found that [Appellant] violated the terms of her parole by failing to timely advise Officer Lacey of her change of address. On January 5, 2024, this [c]ourt revoked [Appellant's] parole and recommitted her to serve the remainder of her sentence.

On January 11, 2024, [Appellant] filed a motion for reconsideration of sentence, which this [c]ourt denied on February 29, 2024. Meanwhile, on February 5, 2024, [Appellant] filed a notice of appeal to the Superior Court. On March 1, 2024, the [c]ourt ordered [Appellant] to file a Pa.R.A.P. 1925(b) statement of matters complained of on appeal. [Appellant] timely filed her Rule 1925(b) statement on March 21, 2024.

## II.   **RELEVANT FACTS**

[Appellant] was granted parole on November 22, 2023, and she was assigned to Officer Lacey's supervision on November 27, 2023. Since [Appellant's] new residence was in Lycoming County, Officer Lacey advised that [Appellant's] parole supervision would eventually be transferred to Lycoming County. (N.T., 12/8/23[,] at … 4-5).

On December 6, 2023, Officer Lacey received a phone call from a Child & Youth Services ("CYS") representative in Lycoming County, who had concerns about [Appellant] and her children. Later that day, Officer Lacey spoke on the phone with [Appellant], who advised she "was having some issues" residing with her stepmother, Rhonesia Brooks ("Ms. Brooks"). [Appellant] advised that she no longer resided at Ms. Brooks' home and had moved in with her sister. Therefore, the address [Appellant] provided to the parole/probation department was no longer the address where she was actually living. (*Id.* at 6-7). This was a violation of [Appellant's] parole.

Officer Lacey had also obtained a police report detailing an incident involving [Appellant] and Ms. Brooks on December 1, 2023, which resulted in contact with police. (*Id.* at 9-12). Officer Lacey testified that one of the standard conditions of probation and parole is for the individual under supervision to report any police contact to her [s]upervisor within 72 hours. (*Id.* at 9). [Appellant] never reported her police contact to Officer Lacey until Wednesday, December 6, 2023, another violation of her parole. (*Id.*). During her phone call with [Appellant] that day, Officer Lacey advised that [Appellant] had a hearing on December 8, 2023, and that they "could discuss everything then." (*Id.* at 36).

[Appellant's] sister, London Weary ("Ms. Weary"), testified at the revocation hearing that [Appellant] resided with her since Friday, December 1, 2023, after [Appellant] obtained an emergency Protection From Abuse ("PFA") order against Ms. Brooks. (*Id.* at 15-16). The PFA order stemmed from a dispute between [Appellant] and Ms. Brooks regarding the custody of [Appellant's] child. [Appellant] had attempted to pick up her child from daycare on December 1st, but the daycare refused to release him without the consent of Ms. Brooks, who had custody of the child while [Appellant] was incarcerated. When Ms. Brooks arrived at the daycare, she and [Appellant] had a physical altercation and the police were called. (*Id.* at 16-17, 27-31).[2]

[2] Ms. Weary testified that Ms. Brooks physically assaulted and threatened Ms. Weary and [Appellant] on several occasions. The acrimony began after [Appellant's] release on parole and stemmed from custody issues regarding [Appellant's] son. (*Id.* at 17-22).

According to Ms. Weary, she and [Appellant] called Officer Lacey that Friday and over the ensuing weekend to report the incident. Ms. Weary claimed Officer Lacey did not answer the phone that day or over the weekend, but that she ultimately spoke to Officer Lacey on the following Monday or Tuesday. Ms. Weary as well claimed to have emailed Officer Lacey on Monday or Tuesday. (*Id.* at 31-33). In contrast, Officer Lacey testified she had no contact from Ms. Weary or [Appellant] until December 6, 2023. (*Id.* at 36-37).[3]

[3] Officer Lacey testified she always tells her assigned parolees/probationers that she spends "half the month at the [c]ourthouse" where she does not have access to her phone or voicemail. She therefore advises her

parolees/probationers to email her if they cannot reach her by phone. (***Id.*** at 49-50).

Following the above testimony, this [c]ourt found [Appellant] in technical violation of her parole because she failed to timely notify her parole officer of her change of address. (***Id.*** at 50).

Trial Court Opinion ("TCO"), 5/9/24, at 1-4 (some formatting altered).

On appeal, Appellant states one issue for our review:

Did not the [trial] court err as a matter of law when it revoked parole based upon a violation of which Appellant had no written notice, in violation of the due process clauses of the United States and Pennsylvania Constitutions?

Appellant's Brief at 2.

Appellant contends that her due process rights were violated when the trial court revoked her term of parole based on a technical violation for which she did not receive written notice. We are compelled to agree. We have explained that,

[d]ue process in [violation of parole/probation ("VOP")] proceedings "requires a determination at a pre-revocation hearing, [also known as] a ***Gagnon I***[1] hearing, that probable cause exists to believe that a violation has been committed." ***Commonwealth v. Sims***, 770 A.2d 346, 349 (Pa. Super. 2001) (cleaned up). "Where a finding of probable cause is made, a second, more comprehensive hearing, a ***Gagnon II*** hearing, is required before a final revocation decision can be made." ***Commonwealth v. Ferguson***, 761 A.2d 613, 617 (Pa. Super. 2000) (cleaned up). ***Gagnon II*** hearings entail two separate considerations. First, it must be determined whether the probationer violated a condition of probation, as demonstrated by evidence containing "probative value." ***Ferguson***, ***supra*** at 617 (cleaned up). Second, if it is found that the probationer did violate a condition of probation, the court must determine whether the "probationer [should] be recommitted to prison or … other steps

---

[1] ***See Gagnon v. Scarpelli***, 411 U.S. 778 (1973).

be taken to protect society and improve chances of rehabilitation[.]" *Id*. (cleaned up).

In light of these more comprehensive considerations, *Gagnon II* hearings afford the probationer additional due process safeguards, such as:

(a) **written notice of the claimed violations of probation or parole**; (b) disclosure to the probationer or parolee of evidence against him; (c) opportunity to be heard in person and to present witness and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body…; and (f) a written statement by the fact[-]finders as to the evidence relied on and reasons for revoking probation or parole.

*Ferguson*, *supra* at 617-18 (cleaned up, emphasis added). Indeed, pursuant to Pa.R.Crim.P. 708(A), *Gagnon II* proceedings must be "initiated by a written request for revocation filed with the clerk of courts." Pa.R.Crim.P. 708 *Comment*. We have expounded upon the written notice requirement as follows:

The purpose of requiring prior written notice is to ensure that the probationer can sufficiently prepare his case, both against the allegations of violations, and against the argument that the violations, if proved, demonstrate that probation is no longer an effective rehabilitative tool and should be revoked. The requirement bears directly on the ability to contest revocation.

*Commonwealth v. Carter*, … 523 A.2d 779, 78[1] ([Pa. Super.] 1987) (cleaned up).

*Commonwealth v. Baumann*, 307 A.3d 1231, 1238–39 (Pa. Super. 2023).

Here, the Commonwealth and the trial court concede that Appellant did not receive written notice of the alleged parole violation of failing to timely report her change of address. *See* Commonwealth's Brief at 10 ("[T]he Commonwealth concedes that [Appellant] was not provided with written notice that she was in violation of her parole."); TCO at 6 (recognizing that

"the parole/probation department's summary (***Gagnon II*** summary) did not state that [Appellant] violated her parole by failing to timely report her change of address"). However, the trial court concluded that the notice requirement was satisfied because Appellant "had **actual** notice that this violation would be an issue addressed at the hearing." TCO at 6 (emphasis in original). It explained that Appellant's "counsel stated on the record that[,] 'before' the hearing[,] he was 'under the impression that … there were two potential technical violations of probation [*sic*], one being the failure to report police contact and the second being a failure to report a change of address.'" ***Id.*** (quoting N.T. at 38-39). According to the court, Appellant and her attorney were "fully prepared to address the circumstances prompting [Appellant's] address change, [Appellant's] purported efforts to contact Officer Lacy after she changed her address, and whether the alleged violation warranted imprisonment rather than continued parole." ***Id.*** (citing N.T. at 13-23, 38-41, 46-49). The court concluded that, "[b]ecause [Appellant] received actual notice that sufficiently enabled her to prepare her defense, she was provided due process and her appeal on this ground should be denied." ***Id.***

Essentially, the trial court determined that no relief is due because Appellant was not prejudiced by the Commonwealth's failure to provide her with written notice of her alleged parole violation. We disagree.

In ***Commonwealth v. Stratton***, 344 A.2d 636 (Pa. Super. 1975), Stratton was serving probation when he was arrested on new charges to which he subsequently pled guilty. ***Id.*** at 637. Because Stratton had been convicted

of those new charges before his probation revocation hearing, the requirements of a *Gagnon I* hearing were met, and only a *Gagnon II* hearing was held. *See id.* ("The necessity of the 'preliminary' or *Gagnon I* hearing is obviated … if the defendant is convicted in the Court of Common Pleas before the probation revocation is held, as the purpose of the hearing — to show probable cause whether probation has been violated — will have been served by the trial.") (cleaned up). Before Stratton's *Gagnon II* hearing, however, he did not receive written notice of his alleged probation violations. *Id.* at 638. Accordingly, we held that "[t]he probation revocation hearing … did not satisfy the requirements of due process." *Id.* (citations omitted).

Clearly, Stratton had 'actual notice' of his alleged probation violations, as he was convicted of new offenses. Nevertheless, we still held that his due process rights were violated because he was not provided with **written** notice prior to his *Gagnon II* hearing. The same is true in the instant case. Even if Appellant was aware of the violations being alleged before her *Gagnon II* hearing, it is undisputed that she did not receive written notice of those violations. As the Commonwealth candidly — and correctly — observes, "this Court has consistently held that the written notice requirement needs to be **strictly followed**." Commonwealth's Brief at 10 (emphasis added) (citing *Commonwealth v. Harris*, 380 A.2d 471, 472 (Pa. Super. 1977) (holding that the "requirement of written notice is a simple, straightforward requirement, which the Commonwealth can readily meet, and must meet")). Accordingly, we conclude that the trial court erred by revoking Appellant's

- 7 -

parole when she did not receive written notice of the alleged parole violation prior to the **Gagnon II** hearing.  Thus, we vacate her judgment of sentence and remand for the court to conduct a new hearing, prior to which Appellant shall be provided with written notice of the alleged parole violation.

Judgment of sentence vacated.  Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>1/28/2025</u>