J-S01010-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| FRANCIS LOUIS FABEC | : | |
| | : | |
| Appellant | : | No. 626 WDA 2025 |

Appeal from the Judgment of Sentence Entered April 28, 2025
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0006137-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| FRANCIS LOUIS FABEC | : | |
| | : | |
| Appellant | : | No. 627 WDA 2025 |

Appeal from the Judgment of Sentence Entered April 28, 2025
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000338-2021

BEFORE:   BOWES, J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                     **FILED: APRIL 15, 2026**

Francis Louis Fabec appeals from the aggregate judgment of sentence of four to eight years of imprisonment imposed in the above-captioned cases upon revocation of his probation.[1]  We vacate and remand for further a new revocation hearing.

---

[*] Former Justice specially assigned to the Superior Court.

[1] This Court consolidated the appeals *sua sponte* by order of June 16, 2025.

These cases involve multiple theft-related offenses to which Appellant pled guilty in February 2022 in Allegheny County Drug Court.[2]  The plea agreement included a sentence of thirty-six months of probation with the conditions that he undergo electronic monitoring; participate in treatment, which initially was in-patient; pay restitution; and otherwise comply with the rules of probation and the Drug Court Participant Handbook.[3]  *See* N.T. Guilty Plea, 2/28/22, at 9-10.  Appellant acknowledged the court's admonishment that if he did not successfully complete the drug court program, he would "be in the penitentiary."  *Id*. at 11.

The certified record suggests that Appellant struggled with compliance throughout the term of probation.  Hearing officers documented unspecified violations of the conditions of his probation in "Gagnon 1 Hearing Officer Recommendations" docketed on August 25, 2022, November 11, 2022, and December 7, 2023.  Bench warrants were issued for probation violations in

---

[2] For the uninitiated, "drug courts are used as an alternative to the conventional criminal prosecution process in appropriate cases involving drug-related crimes, or where offenders are coping with a drug addiction, in order to achieve the twin goals of reducing the incidence of drug-related crimes, and preventing recidivism by offenders."  *Office of Disciplinary Counsel v. Pozonsky*, 177 A.3d 830, 832 (Pa. 2018).  "Employing principles of 'therapeutic jurisprudence,' these courts combine intensive judicial supervision, drug testing, and comprehensive treatment to assist offenders in overcoming the substance abuse problems that enmeshed them in the criminal justice system."  *Id*.  (citation omitted).

[3] These documents are not included in the certified record.

May and September 2022, July 2023, February 2024, and January 2025.[4]
Appellant was charged with felony escape on June 11, 2023.[5] Further, the
dockets for both cases indicate that, as of January 31, 2024, Appellant was
financially able to make restitution payments, but he had made none.

The dockets further reflect that the monthly drug court review hearings
for December 2024 and January 2025 were cancelled, and a *Gagnon I*[6]
hearing was scheduled to occur on January 27, 2025. On that date, Appellant
appeared before the trial court along with counsel, the probation officer ("PO")

---

[4] The sentencing order denotes that Appellant spent over 600 days in the
Allegheny County Jail on detainers in connection with the instant cases
between the time his three-year term of probation began in February 2022
and the time of his revocation from drug court in January 2025. *See* Order
of Sentence, 4/28/25, at 2.

[5] *See* Motion to Transfer Detainer to Inpatient Treatment (Case 6137-2021),
11/17/23, at ¶ 2.

[6] This Court has explained:

> In *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the United States
> Supreme Court held that a defendant accused of violating the
> terms of his probation is entitled to two hearings prior to formal
> revocation and re-sentencing.
>
> When a parolee or probationer is detained pending a revocation
> hearing, due process requires a determination at a pre-revocation
> hearing, a *Gagnon I* hearing, that probable cause exists to
> believe that a violation has been committed. Where a finding of
> probable cause is made, a second, more comprehensive hearing,
> a *Gagnon II* hearing, is required before a final revocation decision
> can be made.

*Commonwealth v. Heilman*, 876 A.2d 1021, 1026 (Pa.Super. 2005)
(cleaned up).

for each case, and a drug court specialist. Unlike at his subsequent resentencing hearing, the notes of testimony do not indicate that any witnesses were placed under oath at the proceeding. PO Ashley Tuzikow noted Appellant's "series of violations throughout his time in the program resulting in him failing to complete required treatment until the end of 2024." N.T. Drug Court Revocation, 1/27/25, at 2. PO Tuzikow elucidated as follows:

> On December 27 he successfully completed the halfway house level of care and was advanced to Phase 2 in the program. He was placed on electronic monitoring at a three-quarter house; however, very shortly after this he absconded from supervision. He was seen by staff panhandling on the street and failed to contact the team.
>
> A warrant was issued on January 2, and he was detained on January 9. At this time, [Appellant] does not appear amenable to supervision, and we respectfully recommend he be revoked from the program.
>
> At the halfway house we transitioned him to the three-quarter house. I was unable to get him started in outpatient treatment because he absconded from supervision, so I wasn't able to get ahold of him.

*Id*. at 3. PO Vince Cugini concurred, stating: "We're just asking [that he] be revoked from the program because he's been in a little under three years and we can't get him past Phase 2. He only lasted on a bracelet about three days." *Id*.

When asked for his position, Appellant's counsel stated that he "believe[d] [Appellant] [wa]s ready to move on as well." *Id*. at 4. The court then declared that it was removing Appellant from drug court and would sentence him at a later date. *Id*. It inquired whether Appellant wished to

- 4 -

have a presentence investigation ("PSI") and, with counsel responding in the affirmative, the court ordered a PSI report.

Both case dockets note the scheduling of a *Gagnon II* hearing, although neither certified record contains a written request for revocation specifying which conditions of his probation Appellant was alleged to have violated. On April 28, 2025, the same participants from the *Gagnon I* hearing reconvened for what the cover page of the notes of testimony represent was "Drug Court *Gagnon II* Sentencing." *See* N.T. Drug Court *Gagnon II* Sentencing, 4/28/25, at 1. At the outset, Appellant's counsel informed the court that he had reviewed both the "Gag 2" and PSI reports and had no corrections or additions. *Id*. at 2. Although the hearing transcript denotes that an oath was administered to witnesses prior to going on the record, and the POs and drug court specialist were present, none was called to offer testimony concerning the violations that apparently were documented in the "Gag 2" report. Nor does the record state that the report was offered or entered into evidence, and it does not appear in either certified record.

Nonetheless, the court proceeded to conduct a sentencing hearing. In that vein, Appellant's counsel highlighted mitigating factors and asked for concurrent terms of incarceration with minimums in the "bottom to middle" of the standard guidelines range of twenty-four to thirty-six months. *Id*. at 6. For its part, the Commonwealth emphasized "that the Drug Court Treatment Team has done everything that we feel we could do to try to help [Appellant].

- 5 -

We wanted to see him succeed, and we have exhausted all of our resources. [Appellant] did not take advantage of those opportunities that we presented to him." *Id*. at 8. Finally, Appellant exercised his right to allocution to express his appreciation for the efforts of the team and to apologize for his inability to successfully complete the program. *Id*. at 8-9.

The trial court revisited Appellant's criminal history, which began with burglary charges in 1985 and saw him sentenced for various offenses in each decade since. *Id*. at 9-10. It recognized that Appellant "had a terrible childhood," but observed that, in the forty years since, he was unable to avail himself of opportunities for rehabilitation, instead "going back to the street" each time. *Id*. at 10. Consequently, the court imposed consecutive sentences of twenty-four to forty-eight months of imprisonment, with 700 days of time credit. *Id*. at 10-11.

Appellant filed a timely post-sentence motion seeking modification of his sentence, which the trial court promptly denied without a hearing. This timely appeal followed. The court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. It granted Appellant's request for an extension of time, and he ultimately filed his statement.[7] He presents

---

[7] Concerning Rule 1925(b) compliance in this appeal, we observe that the trial court's order did not include "both the place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement" to the trial judge, as required by Pa.R.A.P. 1925(b)(3)(iii). Further, although being granted an extension of time, Appellant filed his
*(Footnote Continued Next Page)*

one issue for our consideration: "Whether the trial court erred in revoking [Appellant]'s probation where the Commonwealth failed to produce sufficient evidence to support a finding of record that [he] violated a condition of probation as required by Pa.R.Crim.P. 708(B)?" Appellant's brief at 9.

We begin with the governing legal principles:

> When considering an appeal from a sentence imposed following the revocation of probation, our review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing. Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion.

*Commonwealth v. Giliam*, 233 A.3d 863, 866–67 (Pa.Super. 2020) (cleaned up).

This Court has explained that "[p]robation revocation is an integral element of the original conditional sentence." *Commonwealth v. Seals*, ___ A.3d ___, 2025 WL 4234323, at *5 (Pa.Super. 2026) (*en banc*) (cleaned up). "When assessing whether to revoke probation, the trial court must balance the interests of society in preventing future criminal conduct by the defendant

---

statement a day late. No sanction results, however, because assuming *arguendo* that the court's Rule 1925(b) order was enforceable despite its defect, we may review the issues raised in the late statement and addressed by the trial court pursuant to *Commonwealth v. Thompson*, 39 A.3d 335, 340 (Pa.Super. 2012) ("When counsel has filed an untimely Rule 1925(b) statement and the trial court has addressed those issues we need not remand [pursuant to Rule 1925(c)(3)] and may address the merits of the issues presented.").

against the possibility of rehabilitating the defendant outside of prison." *Commonwealth v. Baumann*, 307 A.3d 1231, 1236 (Pa.Super. 2023) (cleaned up). "Revocation and resentencing are warranted if, in the face of a new criminal act or the violation of a condition of probation, the court finds that probation is no longer achieving its desired aims of rehabilitation and deterring criminal activity." *Seals*, 2025 WL 4234323, at *5 (cleaned up).

Probation violation hearings are typically far less formal than a trial. *See*, *e.g.*, *Commonwealth v. Cosgrove*, 629 A.2d 1007, 1011 (Pa.Super. 1993). Rather than the Commonwealth having to overcome the presumption of innocence with proof beyond a reasonable doubt, revocation of an order of probation necessitates only a showing by a preponderance of the evidence that the defendant violated a specified condition of his probation. *See Baumann*, 307 A.3d at 1236-37. Nevertheless, hearsay is generally not admissible to prove a violation, nor may a revocation be founded upon documents not admitted into evidence. *See Commonwealth v. Allshouse*, 969 A.2d 1236, 1241 (Pa.Super. 2009). If the court determines that the Commonwealth's evidence established a violation of the condition of the defendant's probation, then "the trial court must make a finding on the record that a violation occurred and then proceed to resentence [him]." *Seals*, 2025 WL 4234323, at *5.

As noted above, due process accorded Appellant the right to two hearings before his probation was revoked and a new sentence imposed,

namely the *Gagnon I* and *Gagnon II* hearings outlined above. *See Heilman*, 876 A.2d at 1026. Although distinct, we have "acknowledge[d] that one violation hearing may satisfy the requirements of both a *Gagnon I* and *Gagnon II* hearing." *Id*. at 1027. Additionally, while a defendant may elect to forgo a hearing, "for this Court to uphold such a waiver of a constitutional right, the record must clearly demonstrate an informed relinquishment of a known right." *Id*. (cleaned up).

Here, Appellant's complaint concerns his *Gagnon II* rights, which we have summarized thusly:

> *Gagnon II* hearings entail two separate considerations. First, it must be determined whether the probationer violated a condition of probation, as demonstrated by evidence containing "probative value." Second, if it is found that the probationer did violate a condition of probation, the court must determine whether the probationer should be recommitted to prison or other steps be taken to protect society and improve chances of rehabilitation.
>
> In light of these more comprehensive considerations, *Gagnon II* hearings afford the probationer additional due process safeguards, such as: (a) written notice of the claimed violations of probation or parole; (b) disclosure to the probationer or parolee of evidence against him; (c) opportunity to be heard in person and to present witness and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking probation or parole.

*Baumann*, 307 A.3d at 1238 (cleaned up).

Procedurally, *Gagnon II* hearings are governed by Pa.R.Crim.P. 708, which provides in pertinent part as follows:

**Rule 708. Violation of Probation, Intermediate Punishment, or Parole: Hearing and Disposition**

(A) A written request for revocation shall be filed with the clerk of courts.

(B) Whenever a defendant has been sentenced to probation or intermediate punishment, or placed on parole, the judge shall not revoke such probation, intermediate punishment, or parole as allowed by law unless there has been:

(1) a hearing held as speedily as possible at which the defendant is present and represented by counsel; and

(2) a finding of record that the defendant violated a condition of probation, intermediate punishment, or parole.

Pa.R.Crim.P. 708.

In its opinion, the trial court quoted Rule 708(B) and then stated:

The record clearly indicates that [Appellant] had no corrections to the ***Gagnon II*** Report that detailed his probation violations, the latest being his absconding from electronic monitoring on December 27, 2024. The ***Gagnon II*** Report indicated [Appellant] repeatedly admitted to using cocaine and drinking alcohol in May of 2022. In October 2022, he was discharged from the Hyland House after staff found he was selling his food stamps for alleged drug money. In June of 2023 he appeared for a negative Drug Court review for using cocaine while at Passages to Recovery. In June of 2023 he also escaped from Passages resulting in an escape charge and he remained an absconder until the time of his arrest in July of 2023. In December of 2023, he admitted that he had relapsed and was drinking a fifth of vodka a day as well as using crack cocaine. In December of 2024, as noted above, he was placed on electronic monitoring and he absconded from community supervision and probation violation warrant was issued on January 2, 2025 and he was detained on January 9, 2025 and he appeared for a ***Gagnon*** Violation Hearing on January 27, 2025 at which time it was recommended that he be revoked from the Drug Court Program.

As previously indicated, [Appellant] indicated that there was no corrections or additions to either the ***Gagnon II*** Report, or the

- 10 -

[PSI r]eport, and therefore, [Appellant]'s claim that there was insufficient evidence produced that [Appellant] violated a condition of his probation is meritless.

Trial Court Opinion, 9/15/25, at 5.

Appellant argues that this analysis is flawed because the court never admitted the **Gagnon II** report or the PSI report into evidence. **See** Appellant's brief at 20. Further, he contends that, by treating his failure to offer any corrections to the **Gagnon II** report as "acceptance of that report's substance *in toto*," the court "impermissibly shifted the burden of proof from the Commonwealth to" Appellant. **Id**. at 25. Citing case law indicating that "[i]t is fundamentally unfair to incarcerate a person for violating a condition never officially imposed," Appellant laments that the trial court made no on-the-record finding as to precisely how he violated a clear condition of his probation. **Id**. at 24-25. He asserts that "general references to unadmitted reports cannot overcome this deficit," and asks us to vacate his sentence and revocation and remand for a new **Gagnon II** hearing. **Id**. at 25.

For its part, the Commonwealth maintains that it adduced sufficient evidence to justify the revocation.[8] It cites the allegations made by the POs

_____

[8] The Commonwealth initially argues that Appellant waived his complaints by failing to object at the revocation hearing. **See** Commonwealth's brief at 8. We are unpersuaded. In the context of underlying convictions, the purely legal question of evidentiary sufficiency is not subject to Pa.R.A.P. 302(a) waiver. **See Commonwealth v. Cravener**, 344 A.3d 370, 377 (Pa.Super. 2025). Precedent considering this aspect of issue preservation in the probation revocation context has applied Rule 302(a) waiver to other attacks

*(Footnote Continued Next Page)*

at Appellant's January 27, 2025 *Gagnon I* hearing about Appellant's noncompliance, over which the trial court presided and revoked his participation in the drug court program. *See* Commonwealth's brief at 19. The Commonwealth further stresses Appellant's acknowledgment at the *Gagnon II* hearing that he had not complied with the drug court conditions. *Id*. at 20. Therefore, the Commonwealth advocates for affirmance of Appellant's judgment of sentence.

The certified records and the applicable law do not support the positions of the trial court and the Commonwealth. The *Gagnon II* report was not filed or included in the certified record of either case. More importantly, neither it nor any other document establishing a violation of the conditions of Appellant's

---

on the proceedings, and to sufficiency challenges where the defendant stipulated to a violation. *See Commonwealth v. Collins*, 424 A.2d 1254, 1254 (Pa. 1981) (holding objections to notice, a speedy revocation hearing, confrontation rights, and sentencing were waived because not raised below); *Commonwealth v. Miller*, 283 A.3d 376 (Pa.Super. 2022) (deeming sufficiency challenge waived where Miller stipulated to failing to comply with a specific condition of probation). However, we have reviewed challenges to the sufficiency of the evidence to support the revocation in the absence of an express waiver of the defendant's *Gagnon II* rights. *See Heilman*, 876 A.2d at 1027 ("[A] tacit or implied waiver of a constitutional right is simply insufficient. . . . Moreover, there can be no legitimate argument made that the [hearing in question] satisfied the requirements of *Gagnon II*."); *Commonwealth v. Ayala*, 344 A.3d 1136, 2025 WL 2092851 (Pa.Super. 2025) (non-precedential decision) (rejecting waiver upon noting, *inter alia*: "Essentially, the Commonwealth wants us to find that Ayala waived his right to present his argument by not making it at the abbreviated *Gagnon II* hearing, yet it also wants the benefit of a finding of a technical violation when it did not mention or present evidence of such a violation on the record at this same hearing."). Therefore, we decline to find Rule 302(a) waiver here.

probation was offered and admitted into evidence at the *Gagnon II* hearing. Indeed, the recitation in the trial court opinion of the particular violations Appellant was alleged to have committed is the only indication we have of the bases of the revocation, as those facts were neither testified to by the POs under oath at the *Gagnon II* hearing, or even mentioned by them at the *Gagnon I* hearing when they opined upon Appellant's non-compliance with the drug court program, but were not sworn as witnesses.

As such, we agree with Appellant that the Commonwealth presented insufficient evidence to prove that he violated a condition of his probation warranting revocation. *Accord Baumann*, 307 A.3d at 1239-40 (holding trial court erred in relying upon revocation bases stated for the first time in its Rule 1925(a) opinion); *Commonwealth v. Ayala*, 344 A.3d 1136, 2025 WL 2092851, at *5 (Pa.Super. 2025) (non-precedential decision) (vacating and remanding for a new *Gagnon II* hearing where the *Gagnon II* summary reports were not offered into evidence at the hearing, even though they were filed of record; the existence of the bench warrants suggested that Ayala had absconded, but "the Commonwealth neglected to establish the basic facts and to specify which probationary condition Ayala violated;" and it was not clear that Ayala waived his right to have the violations proven); *Commonwealth v. Jeffries*, 317 A.3d 614, 2024 WL 1249940, at *8 (Pa.Super. 2024) (non-precedential decision) (remanding for a new revocation hearing where the PO did not testify and neither the *Gagnon II* report nor a document reflecting

discharge from a mandated program was moved into evidence at the ***Gagnon II*** hearing).

Therefore, we vacate Appellant's judgment of sentence and remand for a new ***Gagnon II*** hearing.[9]

Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 4/15/2026

---

[9] Should the new hearing result in another revocation of Appellant's probation for a technical violation, we highlight that the court's authority to impose a sentence of total confinement is constrained by the recent amendments to 42 Pa.C.S. § 9771, limiting the maximum sentence allowable for first and second technical violations, as interpreted by this Court's decisions. ***See Seals***, 2025 WL 4234323, at *20 (regarding applicability of amendments); ***Commonwealth v. Goodwin***, ___ A.3d ___, 2026 WL 775409, at *8 (Pa.Super. Mar. 19, 2026) (concluding that "the new statutory scheme leaves no alternative but to conclude the trial court erred in imposing a one-to-two-year term of imprisonment at the hearing for Goodwin's three technical violations because those violations were presented to the court collectively rather than individually" during "the same, first hearing" (cleaned up)); ***Commonwealth v. Oglesby***, ___ A.3d ___, 2026 WL 847717, at *13 (Pa.Super. Mar. 27, 2026) (holding, after determining that § 9771(c) is ambiguous, "that in calculating a probationer's technical violations for purposes of [§] 9771(c), a VOP court must consider only violating behaviors that were accompanied by a judicial finding that the probationer committed a violation").

- 14 -